GEORGE v. SERRETT, ADMINISTRATOR.

4-7148                                                      182 S. W. 2d 198

Opinion delivered June 19, 1944.

*U. J. Cone,* for appellant.

*Thos. Compere* and *George Norman,* for appellee.

KNOX, J. Dr. B. F. George, a life-long citizen of Ashley county, but who on account of his health had been forced to spend the greater part of the last years of his life in Tom Green county, Texas, died in San Angelo, Texas, October 15, 1933.

Dr. George had never married and the next of kin surviving him were two brothers, Joe George and G. Percy George; one sister, Mrs. Susye George Corson, and one nephew and two neices, children of his deceased brother, Norwood George, the nephew being named G. P. George, and the neices Joan George (now Welsh), and Dora George Hiatt.

On November 1, 1933, letters of administration on the estate of Dr. George were issued by the probate court of Ashley county to Leslie J. Serrett, who was then cashier of Farmers Bank & Trust Co. Sureties on Serrett's bond were Frank Pugh, vice president of the bank, and G. Percy George, brother of deceased, who was president of and principal stockholder in the bank.

On December 27, 1934, Serrett filed his first account current, in which he charges himself with three items as follows: Doss note, $780; 328 shares Farmers Bank & Trust Co. stock, par value of $8,200; cash from insurance, $4,107.43—total, $13,087.43, and the administrator takes

credit for money expended in.the aggregate sum of $4,-098.38, leaving in his possession cash $9.03, the Doss note (which he reports is in process of foreclosure), and the bank stock (which he reports is intact).

In conformity with statutory requirements proper court orders were made and complied with respecting filing, continuance and publication of notice of the filing of such account.

No further account current, final account, petition for discharge, report or pleading of any character appears to have been filed by the administrator, and there is of record no further order of court, of any character whatever, respecting this estate.

Claims against the estate, approximating some nine or ten thousand dollars, appear to have been filed with the clerk. Some of these, however, do not appear to have been presented to the administrator for allowance and classification.

Ancillary administration was effected in Texas, where at the time of his death Dr. George had on deposit in the San Angelo National Bank $723.98. Two hundred fifty dollars of the Texas bank deposits was used to pay Texas claims and cost of the ancillary administration, and the balance was paid directly to Farmers Bank & Trust Company of Hamburg, Arkansas, to be applied on its note claim, which had been filed in the Arkansas administration, and thereafter the ancillary administration in Texas was closed.

All parties to this litigation appear to concede that while Serrett held the title of administrator, in truth and fact, because of his kinship to the heirs, and his connection with the bank (which was the largest creditor of the estate), the actual management of the estate was left to G. Percy George, a brother of the deceased, who was a prominent attorney, and president and principal stockholder of the bank. The mother of the Norwood George children testified that as agent for her children and with their full knowledge and consent she made arrangements

with him to look after their interests. Her testimony concerning this is as follows: "Being their uncle, an attorney, and president of the bank, he assured me he would protect their interest, and I relied upon him, . . . with perfect confidence," I had no reason to doubt either the faithfulness of his services or the correctness of his statements or the statements of the administrator of the estate of B. F. George, because he had even stated to me that, having so much money of his own, he didn't want his share of any interest in the bank. I was surprised when I received notice that he claimed his share in the bank stock.

Serrett testified as a witness for appellants that on June 5, 1936, he wrote Mrs. Corson, Joe George, G. P. George and the widow and heirs of Norwood George that "after liquidating the business of the deceased there remained in my hands an unpaid balance of $3,034.20," and offering to pay the same equally, that is one-fourth each to Joe George, Susye George Corson, and G. P. George, and the remaining one-fourth to the heirs of Norwood George, on their signing and returning receipts sent with such letters.

The receipt inclosed was in these words: "Received of Leslie J. Serrett, as administrator of the estate of B. F. George, deceased, the sum of $758.55 in full settlement of all our interest in said estate.

"And in consideration of the payment of the above sum of money we and each of us hereby release and acquit the said Leslie J. Serrett as said administrator of any further liability to us on account of our interest in said estate."

In a verified pleading filed herein, Serrett details the circumstances surrounding the execution of these receipts as follows: "G. P. George on June 5, 1936, advised this respondent that he had made settlement with the heirs of B. F. George, and the balance to be paid by him to them was in the sum of $3,034.20, . . . and he was to have said bank stock transferred to him of said estate, and this would close said estate.

"Said respondent prepared receipts accordingly for each . . . in the sum of $758.55, and advised said heirs that this closed the estate upon them signing said receipts.

"Said heirs duly signed said receipts . . . and said estate was duly closed, and on July 13, 1936, the bank stock of B. F. George was duly transferred on the books of the Farmers Bank & Trust Company to the name of G. P. George, as owner, and remained as such until the death of G. P. George in the year of 1941. Said receipts were sent to the court of Tom Green county, Texas, where settlement of said estate was finally shown in the early part of the year 1937."

Norwood George's children and Joe George brought this action on June 2, 1941, and later Susye George Corson, who had been made a defendant in order that all rights might be adjudicated, adopted the complaint as her own, asking to be made a party plaintiff. The action was brought against the administrator, Serrett, his surviving bondsman, Frank Pugh, and the estate of his then deceased bondsman, G. Percy George, by Sam J. Wilson as executor, and Wilson in his own right as devisee.

Later, by amendment, Farmers Bank & Trust Company, of which G. Percy George had been president and practically sole owner, was made a defendant on the allegation that it had wrongfully received and appropriated large funds of the estate of Dr. B. F. George.

Appellants allege fraudulent mishandling and wrongful appropriation of funds, fraudulent handling and conversion of securities by G. Percy George and the administrator, wrongful and fraudulent receipt and appropriation of funds by representation by the administrator in procuring receipts of plaintiffs, relation of trust and confidence between plaintiffs on the one hand and G. Percy George and the administrator on the other and abuse thereof, absence of complete and adequate remedy at law, and the necessity of avoiding a multiplicity of actions, and invoke the jurisdiction of the chancery court,

asking full and complete adjudication of all the rights of all parties.

In the early case of *Hankins* v. *Layne,* 48 Ark. 544, 3 S. W. 831, the boundary line dividing the jurisdiction in matters of this character between probate and chancery courts was defined as follows: (Quoting headnotes 1 and 3), "1. Administration: *Jurisdiction of chancery.* A court of equity cannot lift an estate out of the probate court and proceed to administer it, nor even interfere to correct errors and irregularities where actual fraud is not alleged and proved, unless they are so gross and reckless as to make the inference of fraud necessary for the purposes of justice. Nor can it undertake to correct frauds in unconfirmed settlements. But it can interpose to correct frauds in confirmed settlements, and other frauds and gross mistakes in the course of administration not within, or having passed from, the jurisdiction of the probate court, and also to prevent impending irreparable injury where the probate court cannot give effectual relief.

"3. Same. *Jurisdiction of probate court.* The probate court has ample power to charge an executor or administrator with any money or property of an estate with which he has fraudulently failed to charge himself, and, if need be, to compel him to file proper inventories and appraisements of its property coming to his hands as such, at any time before his final settlement and discharge."

The division of jurisdiction has been observed and adhered to throughout the years. *Kilgo* v. *Garvin,* 201 Ark. 403, 144 S. W. 2d 1067; *Beckett* v. *Whittington,* 92 Ark. 230, 122 S. W. 633; *Watson* v. *Henderson,* 98 Ark. 63, 135 S. W. 461; *Wallace* v. *Swepston,* 74 Ark. 520, 88 S. W. 398, 109 Am. St. Rep. 94; *Dyer* v. *Jacoway,* 50 Ark. 217, 6 S. W. 902.

It is admitted that there has been no formal order of the Ashley probate court closing the estate, or even confirming the first and only account current filed therein. Although appellants in their brief say: "The

administration has never been closed, but is still pending," they nevertheless insist here that equity has jurisdiction.

Appellees say, however, that the "estate was settled and closed in June, 1936," not by a formal order, but by means of a private agreement between the parties, in the nature of a "family settlement," and they do not question jurisdiction.

At 34 C. J. S., Executors and Administrators, § 836, p. 958, it is said: "Where there are no creditors or none whose debts are not paid, legatees, distributees, and other persons entitled to the estate may enter into agreements among themselves, or with the personal representative, as to the settlement of the estate, . . . Such agreements are not against public policy. Indeed, the settlement of decedent's estates by family agreements is greatly favored by the courts. . . .

"A private accounting and settlement of decedent's estate is as effectual for all purposes as a judicial decree, unless it is impeached for fraud or other inequitable conduct, and relieves the representative from the duty of rendering a judicial accounting, unless such a result would contravene some statutory provision. However, it can be set aside on the ground of fraud or mistake, or on other equitable grounds. Moreover, the court will scrutinize the agreement with care where the parties do not have equal knowledge, or where one of the parties has just attained his majority. The validity of a written agreement set up by a personal representative as a release from his duty to account and settle may be inquired into, and it will be of no avail if obtained by misrepresentation or fraud, or entered into under a mistake of fact. A receipt, although reciting a settlement in full, may be open to explanation and is not necessarily conclusive on legatees or distributees in a suit brought by them to compel an accounting."

The sole evidence tending to establish the family settlement is the releases or receipts executed by the parties in June, 1936, when they accepted from the ad-

ministrator checks for sums supposed to represent their respective distributive shares in the estate. If any agreement was entered into, it was made between appellants and G. P. George, and not between appellants and the administrator.

Whether the transaction assumed the dignity of a family settlement is a matter of no great importance. It is admitted that all of the heirs did execute and deliver to the administrator these receipts or releases, by which they, and each of them, accepted the sums so paid "in full settlement of all our interest in said estate," and in consideration thereof did "release and acquit the administrator of any further liability to us on account of our interest in said estate."

One who seeks to compel an executor or administrator to account must show that he is interested in the estate, as a creditor, distributee, legatee, or otherwise. 34 C. J. S., § 830, p. 945; 21 Am. Jur. 664.

If the instruments executed by appellants were effectual to assign or release their rights in the estate, then, thereafter, they have not had, and do not now have such an interest in the estate as would entitle them to bring or maintain an action or suit of any kind in the probate court, chancery court, or any other court, seeking to compel the administrator to account. These instruments purport to fully release the administrator, and in the absence of fraud in the procurement thereof would be effectual to denude the persons executing the same of all interest in this estate.

In the case at bar appellants allege that these releases were procured by fraud, and hence are of no effect. It becomes necessary to determine what court has jurisdiction to hear and determine the issue of fraud.

At 34 C. J. S., § 830, p. 947, it is said: *"One who has assigned or released his interest* in the estate has been held to have the right to demand an accounting where he denies the validity of the assignment or release and the probate court cannot try that question; but there is authority for the view that the probate court may deter-

mine the validity of the assignment, and if it is held valid will deny relief to the assignor. Moreover, it has been held that where an heir brings suit against the personal representative for an accounting and to set aside releases of his interest in the estate to such representative, an accounting, which would involve an extensive and expensive investigation, should not be granted until the·validity of the releases has been fully determined."

In *Bush* v. *Prescott & N. W. Railway Co.,* 76 Ark. 497, 89 S. W. 86, Judge McCulloch, speaking for the court, said: "It may be said that the plaintiffs had a remedy at law, and might, in avoidance of the assignment and compromise, show fraud in the procurement, upon a motion in Nevada Circuit Court to reinstate the cause, or in a new action against the railway company to recover damages. *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 73 Ark. 42, 83 S. W. 332, 3 Ann. Cas. 573. But this remedy does not oust the concurrent jurisdiction of courts of equity to grant relief against fraud by cancelling a written release or assignment obtained by such means. 1 Pom. Eq. Jur., (3 Ed.) § 188; *George* v. *Tate,* 102 U. S. 564, 26 L. Ed. 232; *Atlantic Delaine Co.* v. *James,* 94 U. S. 207, 24 L. Ed. 112."

Assuming, without deciding, therefore, that appellants had a remedy in the probate court to avoid the releases for fraud, they, nevertheless, were entitled to invoke the jurisdiction of the chancery court in a direct proceeding to cancel such instruments for fraud. Such was an essential part of all, and a prerequisite to any other, relief prayed, and the chancery court did in fact have jurisdiction to grant the relief prayed to that extent at least. Because of conclusions hereinafter expressed it becomes unnecessary for us to decide whether the chancery court, if having canceled the releases for fraud, could have disposed of the entire controversy or left appellants to seek further remedy in the probate court.

Before trial of this cause both Mrs. Corson and Joe George directed that the cause be dismissed as to them;

leaving only the Norwood George children as actual parties plaintiff.

The allegations of fraud are directed against G. Percy George, deceased, and not against Serrett. Appellants in their brief say: "We would like the court to know that we know the administrator to be an honest man. But he may possibly have been too loyal. For we have been puzzled over the concealments mentioned. And when we followed the admitted assets, three-fourths of which admittedly belonged to appellants, we always found the hand of G. Percy George and that of his *alter ego,* Farmers Bank & Trust Company, holding same."

Five years, lacking only a few days, intervened between the date appellants executed the receipt and release and the date of institution of this suit. In the meantime, to-wit—on January 16, 1941, G. Percy George died. During the four years and six months which intervened between the execution of the releases and the death of G. Percy George, appellants took no action to set aside the release or reopen the estate.

Mrs. Oyster, the mother and agent of the Norwood George children, testified that during his lifetime the interests of her children were intrusted to G. Percy George, with perfect confidence, and that neither they nor she had any reason to doubt either the faithfulness of his services or the correctness of his statement. Although she was fully aware of the execution of the release, she testified that shortly after the death of G. Percy George she, acting for and with the consent of her children, secured the services of another attorney "to investigate and see if they were not entitled to an interest in the estate of Dr. George." This suit resulted from that investigation. No reason is given for the sudden change from "perfect confidence" to suspicion, requiring an investigation. Certain it is that no fact was developed by this belated investigation, and offered here in support of the allegation of fraud, which could not have been as readily developed by a similar investigation made at any time between the date of the release and the date of the death of G. Percy George.

Jurisdiction of a court of equity is here invoked to relieve against fraud alleged to have been committed by a man four and one-half years before his death. During all that time appellants remained silent, although every fact which is now offered in evidence was known, or could have been easily ascertained long prior to such death. It appears that G. Percy George was the only person connected with appellees who was familiar with the entire matter. The loss of testimony is a material circumstance in enforcing the equitable doctrine of laches. *Davis* v. *Harrell,* 101 Ark. 230, 142 S. W. 156; *Segers* v. *Ayers,* 95 Ark. 178, 128 S. W. 1045; *Reece* v. *Bruce,* 136 Ark. 378, 206 S. W. 658; *Walker* v. *Norton,* 199 Ark. 593, 136 S. W. 2d 315.

By reason of appellants' unreasonable and unexplained delay in bringing this suit, appellees have been deprived of the testimony of G. Percy George, who, it appears, was the only person who was fully cognizant of the facts. Because of such laches the chancellor properly dismissed appellants' complaint for want of equity —the decree is, therefore, affirmed.