HERNDON v. ADKISSON, ADMR.

4-7517                                         184 S. W. 2d 953

Opinion delivered January 29, 1945.

*June P. Wooten,* for appellant.

*Lonzo A. Ross* and *George F. Hartje,* for appellee.

McHANEY, J. Appellant and appellee are the daughter and son and only children and heirs at law of E. B. Adkisson who died intestate in Faulkner county, Arkansas, on September 13, 1935. He was survived also by his widow, Mrs. Sue Adkisson. He left a substantial estate consisting of real and personal property, the latter being of the appraised value of $8,045.75.

Appellee, the son, was appointed administrator on September 17, 1935, with his mother's consent and approval and apparently with the consent and approval of appellant, as she and her mother signed his bond as such administrator. The undisputed proof shows that the mother, Mrs. Adkisson, handled the affairs of the estate as if she were the administrator; that she collected the debts owing to the estate and disposed of personal property belonging to it; that during the lifetime of her husband she attended to his business and settled with his customers; and that she was more familiar with the affairs of the estate than was appellee. From time to time, during the course of winding up the estate, she made distribution of the funds on hand, sending to appellant one-third, to appellee one-third, and retaining one-third for herself. No receipts were requested and none given by any of them for the money or property divided. No books were kept showing the collections or distributions made, and appellant kept no record of the amount received by her. There were no creditors, or if there were they were paid off in full shortly after or before appellee

was appointed administrator. He did file an inventory of the estate and an appraisal thereof. On one occasion he requested and was granted authority of the court to withdraw $2,500 and accrued interest in postal funds from the Little Rock postoffice, and on another occasion he requested and was granted authority to compromise a debt due the estate. Also an order was made approving the payment of the inheritance tax due the State of Arkansas. Otherwise he made no reports or settlements to the Probate Court.

On February 23, 1944, appellee filed his petition with the Probate Court for his discharge as administrator of said estate and for the release and discharge of his bond. His mother joined in this petition. Appellant was requested to join, but refused to do so. He alleged that the real estate had been divided by mutual agreement among the interested parties and transferred to them without court procedure; and that the personal property had been distributed as above set out. He alleged that he did not keep an accurate record of accounting and did not file annual reports, but that division was made as the estate was liquidated, no claims pending, and that the estate has been satisfactorily wound up. Appellant filed a response to said petition in which she denied that the notes and accounts were collected over the period and divided by agreement and denied that satisfactory settlement had been made. She alleged that appellee had made collections of notes and accounts, but did not account for all of the collections so far as she was concerned.

Trial resulted in a finding by the court that said estate "has by mutual agreement been divided and settled among the three interested parties above named, each receiving his or her pro rata part of said estate," etc. Judgment was entered discharging the administrator and his bond. This appeal followed.

It is admitted that the administrator did not file accounts current as provided by § 182 of Pope's Digest, which ordinarily he would be required to do. But we think those requirements may be waived by agreement of

all the heirs and distributees, there being no creditors or other persons interested in the estate, and all persons being of age. In fact, § 1 of Pope's Digest so provides in effect, and under § 2 the letters of administration granted to appellee might have been revoked. Apparently the only reason for an administrator in this case was to comply with the Triple "A" program. We think the Probate Court correctly found and held that the estate was divided and settled by mutual agreement and that each has received his or her pro rata part thereof, and that such finding and holding is supported by a preponderance of the evidence, or at least we cannot say it was against the preponderance of the evidence. Appellee and his mother testified there was such an agreement, which appellant denied. But it appears to us that appellant is not only contradicted by her mother and brother, but by her own conduct and testimony in the record. She testified that she told them, when the matter of an administrator was being discussed, that "in the first place we didn't need an administrator, we are all of age, we will have to be out money for an administrator," and later she said, "I finally agreed to it—they high pressured me into it—I agreed to it." When asked by her counsel whether she had received all the money due her from said estate as testified to by her mother, she said: "Well, I have received some, how much I don't know. Whether I have received it all I don't know—I don't know for sure. In the transactions Sam would collect the money and pay it over to Mamma. She would give me half of what he would give her. I wouldn't know half of the time what it was for or anything else about it." She further testified she gave no receipts for the money paid her and kept no record of such payments and when asked on cross-examination how she knew whether she had anything coming to her, since she kept no record of payments received, she answered: "I have an idea."

Appellant does not allege or testify that there is anything due her, but only that she has "an idea" there is. This estate was almost wholly distributed by 1937 and was finally disposed of in 1938, except two small tracts

of land. During the years from 1935 to 1944, appellant filed no petition or other request with the Probate Court to require appellee to file his account current, nor did she ask that he be cited for this purpose. Her only request for a citation was made to the clerk after appellee filed his petition for a discharge. All these facts were no doubt considered by the trial court in reaching the conclusion that there was a mutual agreement among the parties to divide and settle the estate in the manner detailed and that it was so divided and settled, and we cannot say this finding and the judgment based thereon are not supported by a preponderance of the evidence.

As said in *Dudgeon* v. *Dudgeon,* 119 Ark. 128, 177 S. W. 402, ''Moreover, we think the agreement which the proof shows these parties entered into after the death of the testator was in the nature of a family settlement, and it is the fixed policy of the courts to uphold such settlements where the proof shows them to have been made.'' See, also, *Barnett* v. *Barnett,* 199 Ark. 754, 135 S. W. 2d 828; *Hollowoa* v. *Buck,* 174 Ark. 497, 296 S. W. 74; *George* v. *Serrett, Admr.,* 207 Ark. 568, 182 S. W. 2d 198. In the last cited case we said: ''Where there are no creditors or none whose debts are not paid, legatees, distributees, and other persons entitled to the estate may enter into agreements among themselves, or with the personal representative, as to the settlement of the estate. Such agreements are not against public policy. Indeed, the settlement of decedent's estate by family agreement is greatly favored by the courts.''

So, here, the court found that there was a family settlement or agreement as to the manner of handling said estate, which, as we have said, is not against the preponderance of the evidence, and since ''the settlements of decedents' estates by family agreement are greatly favored by the courts,'' we see no valid reason to set aside the judgment of the Probate Court.

Affirmed.