*214
 
 Battle, J.
 

 The proofs satisfy ns beyond a doubt, that the instrument which the plaintiff seeks to impeach was-obtained by the defendant fairly and without fraud, or the exercise of any under influence ; that the plaintiff was, at the- time when he executed it, entirely capable in law to do> so; that he fully understood it's import and meaning; and that the consideration which he received for it was under the circumstances, fair, if not fully adequate. It cannot, therefore, be set aside either upon the ground of fraud, undue influence, want of capacity in the assignor or for a defect of consideration. If, then, the plaintiff be entitled to the relief which he seeks, either in whole or in part, it must be because the instrument in question is inoperative, either because there was, at the time when it was executed, no interest in him upon which it could operate, or because it is illegal as being against the policy of the law; or, if neither'of these objections be good, that it does not convey or bind the whole of the plaintiff’s interest in the estate of the defendant’s-intestate.
 

 It is. very clear that, at the time when the instrument was executed, it could not operate as a conveyance or assignment of what it purported to transfer. Margaret McDonald, the defendant’s intestate, was then living and the plaintiff had but a mere possibility or expectancy of an interest in her estate. He was at the time one of her nearest blood relations, and had a chance by out-living her, to become entitled to a part or to the whole of her estate as heir at law and next of kin, but. he had no interest, or possibility coupled with an interest in it. It follows as a matter of course, that he did not have any thing which lie could assign or transfer to another either at law or in equity. But he had a right to make a contract to convey whatever interest he might in future have in his cousins’s property, and such a contract, when fairly made upon a valuable consideration, the court of chancery will enforce whenever the property shall come into his possession. Thus it is said, and the assertion is well sustained by the authorities both in England and in this country, that “Chancery will give effect to the assignment of a mere expectancy or possibility,not
 
 *215
 
 as a grant, but as a contract entitling the assignee to a specific performance, as soon as the assignor has acquired the power to perform it.” See the American edition of White & Tudor’s Equity cases, 72 Law Lib. 202 and 224, which cites
 
 Hobson v.
 
 Trevor, 2 P. Will. 191;
 
 Buckley
 
 v.
 
 Newland, Ibid.
 
 182;
 
 Wright
 
 v.
 
 Faucett,
 
 1 Ves. Jun., 409;
 
 Alston
 
 v.
 
 The Bank,
 
 2 Hill, Ch. Cases 235;
 
 Breckenridge
 
 v.
 
 Churchhill,
 
 3 J. J. Marsh. Rep. 13; see also Smith on real and personal property 89 Law lib. 457, and Fry on the specific performance of contracts, 100 Law lib. 263, and the cases particularly of
 
 Wiseman
 
 v.
 
 Roper,
 
 1 Rep. in chan. 154;
 
 Alexander
 
 v.
 
 Duke of Wellington,
 
 2 Russ. & Myl. 35;
 
 Persse
 
 v.
 
 Persse,
 
 7 Clark and Fin. 279;
 
 Hinde
 
 v.
 
 Blake,
 
 3 Beavan 235, and
 
 Meek
 
 v.
 
 Kettlewell,
 
 1 Phil. Rep. 347.
 

 It is true that the policy of giving effect to contracts of this kind against expectant heirs has been doubted by very eminent judges; and C. J. Parsons in
 
 Boynton
 
 v.
 
 Hubbard,
 
 7 Mass. Rep. 112, refused to sanction an assignment made by a nephew in the life-time of his uncle, of his expectant interest in that uncle’s estate. But the doctrine is now too well established to be disregarded, and the authorities to which they refer, fully sustain White & Tudor in saying that “ a mere expectancy, as that of an heir at law to the estate of his ancestor, or the interest which a person may take under the will of another then living, or the share to which such person may become entitled, under an appointment, or in personal estate as presumptive next of kin of a person then living, is assignable in equity for a valuable consideration ; and where the expectancy has fallen into possession, the assignment will be enforced.
 

 Having decided that the instrument in question is binding upon the plaintiff, it only remains for ns to enquire what is the extent of the interest, upon which it operates ? It is contended by the plaintiff’s counsel that at most it can bind only the apparent expectant interest which the plaintiff had in his cousin’s estate at the time it was executed, which, as his brother Neil was then alive, was only one-half. The language of the instrument is as broad and extensive as it could well have
 
 *216
 
 been made, and embraces every thing which, in any possible contingencjq could accrue to the grantor from the estate to which it relates. It is quite probable that neither party fully considered what might eventually come within its operations, but they agree to take the chances and they must now abide by the result. Had the plaintiff died before his brother in the life-time of the intestate, or had they both died before her, then the defendant would have taken nothing by his contract. Had bo.th brothers out-lived their cousin, the defendant could have claimed, under the assignment, only one-half of the estate, blit as the events occurred which were most favorable to him, he gets all.
 

 The result is, that the plaintiff has no equity in the claim which he prefers. If he had in any way obtained the possession of the property of the intestate, the court of equity would have compelled him to convey it to the defendant; and it follows, as a necessary consequence, that, as it is already in the hands of the latter, the Court will not aid the plaintiff in getting it from him.
 

 Per CuRiam, Pill dismissed with costs.