WILLIAM MASTIN *et al. v.* ELAM MARLOW *et al.*

After the pleadings are made up and whilst the trial is progressing, it is irregular to move to dismiss the complaint, or Bill in Equity, for defects apparent upon the face of the complaint or Bill in Equity, except where there is a manifest defect of jurisdiction in regard. *to the subject matter*, as distinguished from a want of jurisdiction in respect to the *person*, or a *statement* of a *defective cause* of action, as distinguished from a *defective statement* of a cause of action.

Where there is no proof of positive fraud or imposition, the contract of an heir expectant to convey what may descend to him by the death of the ancestor, is obligatory upon him, and such contract will be enforced by the Courts.

Where the consideration is fair and adequate and no undue advantage has been taken, the decree is for specific performance, where advantage has been taken of the necessity of the heir expectant, the contract is held as a security for the return of the money actually advanced together with interest.

Where A, an heir expectant of B, executed a deed to C, for " his entire
interest in all the personal estate of B, and also his entire interest in all
the real estate of B, that he the said A may be entitled to as one of the
children and heirs at law of B," it does not convey such an interest as
could be enforced in a Court of Law under the old procedure, but
resort must have been made to a Court of Equity.

*McDonald* v. *McDonald*, 5 Jones, Eq. 211, cited and approved.

Bill in Equity, heard before *Mitchell, J.*, at Spring Term,
1871, of WILKES Superior Court.

The bill alleges that one James Marlow had, by inquisition,
been found to be *non compos mentis*, and that the defendant,
Linda, who intermarried with the defendant, Hilliar Marlow,
conveyed by deed, for a valuable consideration, to the com-
plainants, William B. Mastin and William B. Trausaw, all their
interest and expectancy as heirs at law of the said James
Marlow, in two tracts of land, belonging to him, and par-
ticularly described in said deed.   That by the said deed of con-
veyance the said Hilliar Marlow and his wife, Linda, con-
veyed absolutely to complainants Mastin and Trausaw, in fee
simple, their entire interest in and to the said lands of James
Marlow, with a covenant of warranty of title to the said com-
plainants, that the private examination of the *feme* defendant,
Linda, was duly taken, and said deed was duly registered;
that they also bought the expectancy of the defendant, Elam,
also an heir at law of James Marlow, for value, in the lands
above described, and received a deed therefor with full
covenants of warranty, and paid all the consideration therefor
except an inconsiderable amount, which they are ready to pay
at any time.

The complainants further allege that since the death of James
Marlow, they have repeatedly called on the defendants, Hilliar
Marlow and Elam Marlow, and have respectively requested
them to perform their agreements towards your orator,
specifically, as complainants were advised that some further
assurances by deed were necessary, fully and legally, to convey

the interest and title of the said Hilliar and Linda, his wife, and the interest of the said Elam Marlow to complainants, according to the several agreements above set forth.

That the said defendants, Hilliar Marlow and wife, Linda, and Elam Marlow, have, since the execution of said deeds to complainants, sold their said respective shares in said lands to Dr. James Calloway, for the same prices respectively that complainants gave for said shares, and they have allowed the said Calloway to enter into possession of said lands; that the said Calloway has subsequently conveyed the whole or greater part of said shares to Phineas Marlow, now dead, who, prior to his death, sold and conveyed the whole or a part of said shares in said lands to the defendant Harrell Hays.

The complainants further allege that they are each entitled to five forty-second parts of said lands, and that the said James Calloway and Phineas Marlow had full notice and knowledge that the said Hilliar and wife, Linda, and the said Elam had agreed and contracted to sell their said interests in said lands, and had respectively executed the said instruments of writing above described to complainants for the same.

The complainants also aver their readiness to perform their agreements respectively, and specifically, in all things remaining to be done, and ask that all necessary accounts be taken of the rents and profits of said lands, &c., and that defendants be required to convey the above described shares of land to complainants.

At Spring Term, 1871, the defendants moved to dismiss the bill, because taking all the facts set forth therein to be true, the complainants were not entitled to the relief prayed for, and that said bill be dismissed on the ground that the plaintiffs' remedy at law was complete.

His Honor being of opinion with the defendants, ordered the bill to be dismissed with costs, and plaintiffs appealed.

*W. P. Caldwell*, with whom was *Armfield*, for complainants.

A father is seized in fee of land. The son, in the life of the father, for a valuable consideration executes and delivers a deed of bargain and sale to the plaintiff, in fee, for his interest in the land, and warrants his interest. The deed is duly proven and registered. The father dies intestate. The son, by deed, conveys to Calloway, with notice of the sale to plaintiff. Can the plaintiff maintain ejectment against Calloway or against his bargainee in possession?

1st. Bargain and sale is a contract to convey the land, and the bargainor becomes a trustee, or is seized to the use of the bargainee. 2 Bl. 273, he must be seized at the time, so that this seizin can instantly pass, and if he is not seized at the time, or has no vested interest, the instrument is void as a conveyance. It is an executory contract.

2d. Upon the descent to the son, does the title pass to the plaintiff, by reason of the estoppel? In Rawlin's case, 4 Coke Rep. 52, it was decided that when A, having nothing in land, *demised* it by *indenture* to B for 6 years, and afterwards obtained a term of 21 years, that term was bound by the estoppel, and it was not only a bar to A, but the estoppel passed the estate. And it was decided that a fine levied by a contingent remainderman, or by an heir expectant in the life of the ancestor, bound the estate by the estoppel, upon the happening of the contingency and the descent. Such was also the effect of a common recovery and of a feoffment; they not only concluded the parties, but transferred by estoppel, future estates.

But such was not the effect of grants and releases at common law; and it was early held that the conveyances by bargain and sale, lease and release, and all conveyances operating under the statute of uses, were mere grants, and for a want of the seizin, were governed by the same rule. It has been held in several of the States of the Union, that the estoppel grew out of the warranty usually contained in our conveyances under the statute of uses; and that if a deed had a general

warranty, the parties were not only concluded, but subsequently acquired, estates actually passed by estoppel. But that a warranty has no such effect see Smith's Leading Cases, 629–630. Warranty, in a bargain and sale, neither bars the grantor or those claiming under him, upon the subsequent *descent* of the estate, and the estate does not pass by the estoppel. The editor cites *Bivans* v. *Vanrant*, 15 Georgia Rep. 321. He also cites *Jacocks* v. *Gilliam*, 3d Mur. 47, and same case *Gilliam* v. *Jacocks*, 4 Hawks, 310, which decides that a bargain and sale, with warranty by tenant, in tail, does not make a discontinuance. Taylor, C. J., says that the warranty in a bargain and sale is a personal covenant. To the same effect is cited in *Spruill* v. *Leary*, 13 Ire. 255–408, the dissenting opinion of Pearson, J. With or without warranty, a deed of bargain and sale of an estate, not vested in interest at the time the deed is executed, is void at law, but will be enforced in equity, as an executory agreement to convey, and will be rendered effectual by a decree, as soon as the interest intended to be conveyed actually vests. Sm. Ld. C. 641, and authorities there cited.

In our case, the land itself is not conveyed, and the deed only attempts to convey the expectancy, the interests of the bargainor ; and the warranty is not of the land nor of any estate in the land, but of the bargainor's interest. It is nothing but a contract. Where lands is held adversely, and he who has the right, makes a deed, the bargainee cannot maintain ejectment against the tenant; 1st, because he has only a chose in action ; 2d, for the reason, which I think is the true reason, that the full use cannot be raised out of anything whereof the possession cannot be instantly executed by the statute. If the bargainor afterwards gets the possession, the right in the bargainee is a *scintilla*, which, by his entry is enlarged into the full estate, and the bargainee may maintain ejectment against the disseizor of the bargainor, and it is not by virtue of the warranty or estoppel.

So, if the bargainor in possession has no title and makes a deed, and then gets the right, the bargainee gets the full estate, because the bargainor could raise the use and the statute ·executes the possession, and when he afterwards purchases, he only gets the right. A Court of Equity will· hesitate to con- .sider a deed, made in any terms, by an expectant heir, as an estoppel, for the reason that in equity the deed is *prima facie* fraudulent and void, and is an exception to the rule, that fraud must be alleged and proved; *White* v. *Tudor*, L. C. in Eq. ·420, *et seq.*, and this suspicion extraordinary of the Court, will always induce it to claim the full jurisdiction of any case in which a question of such deed is involved. In *McDonald* v. *Mc-Donald*, 5 Jones Eq. 211, the plaintiff had sold by deed his ·expectancy, and the suit was for the personal estate. But the Court lays down the law, as contended for in this case. See ·cases there cited.

*Bailey*, for defendants.

1. An heir presumptive or apparent in the lifetime of his :ancestor, sells, or professes by writing to sell, to the plaintiff the real estate of such ancestor; afterwards the ancestor dies, and the same person conveys by deed to the defendant. We ·submit that such a bare expectancy was not the subject of a sale at law or in equity, and the attempted sale is a nullity. The doctrine is well settled, both in England and in America; *Jones* v. *Roe*, 3 T. R. 88; *Carlton* v. *Leighton*, 3 Mer. 667; 2 Shars. Black. 290 W.; 3 Washb. Real Pross. 302; *Davis* v. *Haden*, 9 Mass. 514.

2. If it could operate to any intent it can only be by estoppel, in which case the interest, when it accrued, would feed the estoppel and convey a *legal title;* but in no event can a bill in ·equity be maintained.

Pearson, C. J. This is the second instance at the present

Term, of a case, when in the midst of a trial, the proceedings are abruptly stopped by a motion to dismiss. One on the common law docket, *Garrett* v. *Trotter,* Ante. 430, and this case on the equity docket, when after "replication and commissions," depositions and order of publication, the case is set for hearing, and while being heard is put an end to, by a motion to dismiss.

This mode of procedure is irregular, and gives rise to great inconvenience and useless cost.

At law, the orderly mode of procedure is by demurrer ; or else by motion in arrest of judgment, after the trial.

In equity, by demurrer, or else by reserving in the answer the same right to make the objection at the hearing, as if it had been made a special ground of demurrer.

This erratic course of a motion to dismiss, in the midst of the hearing, should never be allowed, except, when there is a manifest defect of jurisdiction in regard to the subject matter, as distinguished from a want of jurisdiction in respect to the person ; or a statement of a defective cause of action, as distinguished from a defective statement of a cause of action ; and the plaintiff by his own statement shows affirmatively, that he has no cause of action, and cannot be helped by the power of amendment, or any other indulgence in the reach of the Court.

His Honor considered this case as one of that extreme kind, for that, by the plaintiffs' own showing, they had a complete remedy at law, and a Court of Equity could, under no conjunction of circumstances, have anything to do with it.

We have here an illustration of the wisdom of adhering to the regular mode of procedure, for, as it turns out, the plaintiffs have not only no *complete remedy at law*, but the defendants seek to turn the tables, and say the plaintiffs have no remedy either *at law* or *in equity ;* and so the bill should have been dismissed, because they have no *status* in any court, and no right at law or in equity.

The original position and the one on which his Honor acted,

was, that the deed to plaintiffs conveyed the legal title, and so they had a *complete remedy at law.* The deed on its face does not purport to convey the land, but "the entire interest of Elam Marlow, in all the personal estate of James Marlow, and also his entire interest, in all the real estate of the said James Marlow, that *he, the said Elam Marlow, may be entitled to, as one of the children and heirs of the said James Marlow;* his share being one eighth part of the personal and real estate of the said James Marlow."

The defendants were compelled to abandon this position; for nothing is clearer, than that to make a grant operative, there must be a grantor, a grantee and a *thing granted;* here there was grantor and grantee, but nothing that was the subject of a grant; James Marlow being alive. The ingenious counsel for the defendants then fell back on a position in the same line; that although the deed could not take effect, to pass the title directly, yet it operated by way of estoppel; and the subsequent acquisition of the estate, by the death of James Marlow, and the descent cast *fed the estoppel,* and did in fact pass the estate. He was met by the rule, "an estoppel against an estoppel, doth put the matter at large," and when the *vente* is apparent on the face of the deed, the party shall not be estopped to take advantage of the truth. Coke Lit. 352 b.

Here, the *vente* did appear on the face of the deed, to-wit: that Elam Marlow, had nothing in the land, which could pass by the deed operating as a conveyance or by way of estoppel, for he had nothing which was the subject of a grant. So, that position was likewise abandoned on the argument.

The ingenious counsel then took a position on the other extreme of his line of defence, and assumed that the plaintiffs had no *status* in any Court, and no right either in a Court of law or of equity, for that, Elam Marlow, the grantor, had but a bare expectancy, a possibility to inherit which, so far from being the subject of a grant, was not even a matter in regard to which a contract could be made.

There is a marked difference between what may be the subject of grant, and the subject of an executory contract; any present estate, whether it be in possession, or to be enjoyed in possession, after the determination of a particular estate, as a reversion or a vested remainder, is the subject of grant, and the title passes thereby; but a thing not in esse, is not the subject of grant. If A makes a bill of. sale to B, for his next year's crop, or the next colt of a certain mare, B acquires no title to the crop or to the colt. So a contingent remainder cannot be assigned, although it is transmissible by descent, and according to the modern cases, it may be devised, (therein overruling the more ancient cases, where it is held, that a contingent remainder, the person being certain, and the event uncertain, cannot be devised, for a devise is a species of conveyance,) so the expectancy of one named in a will as legatee or devisee, or of one who, as in our case, is an heir apparent of his father, cannot be assigned, for he has nothing to assign.

. So, if A makes a deed to B, setting out the fact, that he is in treaty for, and expects to purchase a certain tract of land, and in consideration of, (say $1,000) to him paid, he sells and conveys to B and his heirs, the said tract of land. The deed does not pass the title directly or by way of estoppel, for there is no estate that can be passed.

In all of these cases, however, although the title does not pass, if there be a valuable consideration to bind the bargain, the party is not without remedy, for in the case of the crop and the colt, "*ut res majis valeat quam pereat,*" the law will enforce the contract, by allowing damages to be recovered, for the breach, and in the other cases, equity will enforce a specific performance, treating it as an executory contract, provided there be a valuable consideration, and the bargain was fairly made, and no undue advantage taken either of the party's ignorance or of his poverty. *McDonald* v. *McDonald,* 5 Jones, Eq. 211. Where the cases are all cited and it will be seen that most of them can be reconciled, on the ground, that in the

cases where the Court refuses to recognize the contract of an expectant heir as binding on him, the decision is put on proof of positive fraud and imposition.

The power of an heir expectant to bind himself by contract, in regard to what may descend to him by the death of the ancestor, is taken to be settled. In some cases, when the consideration is fair and adequate, and no undue advantage has been taken, the decree is for specific performance. In other cases, when advantage has been taken of the necessity of the party, the contract is held as a security for the return of the money actually advanced, together with interest, while in other cases, all relief is refused, because of fraud and imposition. Under which of these three classes, the case in hand will fall, it is not for us now to say, as the plaintiffs will no doubt ask the privilege of amending the bill, so as to make the allegation in respect to the price paid, and the fairness of the transaction more distinct and direct; and also to avoid the objection on account of multifariousness, both in respect to the parties and to the relief prayed for. These matters not being up for consideration before us, upon a motion to dismiss the bill for want of equity.

All of this tends to show how much better it would have been to have let the cause come on for final hearing in the Court below; so that when it did come up to this Court, it could have been disposed of finally.

Error.

PER CURIAM.                              Judgment reversed.

NOTE.—Justice Boyden being of counsel in the Court below, did not sit at the hearing of this cause.