NANNIE K. PRICE AND ROBERT D. PRICE, ADMINISTRATRIX AND ADMINIS-
TRATOR, RESPECTIVELY, OF THE ESTATE OF J. W. PRICE, SR., DECEASED, AND
NANNIE K. PRICE, WIDOW, INDIVIDUALLY, AND ROBERT D. PRICE AND
WIFE, EUNICE PRICE, INDIVIDUALLY, v. NANCY PRICE DAVIS AND HUS-
BAND, JOE A. DAVIS; KATIE PRICE OLIVER AND HUSBAND, WILLIAM
OLIVER; MAMIE PRICE MILEY, GERTRUDE PRICE, JAMES P.
PRICE AND WIFE, EDITH PRICE; JOHN W. PRICE, JR., AND WIFE,
GLADYS PRICE; EDNA J. PRICE, GUARDIAN OF BERT A. PRICE,
INCOMPETENT, AND EDNA J. PRICE, INDIVIDUALLY.

(Filed 6 June, 1956.)

**1. Descent and Distribution § 13—**

Intestate died survived by four sons and four daughters. Prior to his death each of the daughters executed a release of any right to share in their father's estate for a specified consideration paid them by their father. There was no contention that the consideration failed to represent a fair division of the entire estate or that there was any bad faith, fraud or overreaching on the part of the ancestor. *Held:* The contracts are binding, and each daughter is estopped thereby to claim any part of the estate.

**2. Same—**

A parent may give to one or more of his children his respective share of the estate without making a division of all his property for distribution among all his children or those who represent them, but if the release executed by a child is for a grossly inadequate consideration or is procured by fraud or undue influence, the consideration for the release should be treated as an advancement and not an estoppel.

APPEAL by defendants Nancy Price Davis and her husband, Joe A. Davis, and Mamie Price Miley, from *Gwyn, J.*, September Term, 1955, of ROCKINGHAM.

This is an action brought under our Declaratory Judgment Act, G.S. 1-253, *et seq.*, by the personal representatives of J. W. Price, Sr., deceased, to which his widow and all of his heirs and next of kin are parties, to wit, four sons and four daughters.

In 1943 and 1944 J. W. Price, Sr., being advanced in age and desiring that his daughters receive their respective portions of his estate during his lifetime, entered into an agreement with his four daughters whereby he paid $6,000.00 to each of them in return for their release of all interest and right of inheritance in his estate. These contracts were substantially identical, and the one executed by the appellant Nancy Price Davis reads as follows:

"I, Nancy Price Davis, of Rockingham County, North Carolina, acknowledge receipt of Six Thousand ($6000.00) Dollars paid to me by my father, J. W. Price, of Price, North Carolina; my said father having heretofore paid to me the sum of $3612.69, and this day is paying the balance of $6000.00, to wit: $2387.31. It is understood and thoroughly agreed by me, that I am to receive no further share from my father's estate, either real, personal or mixed, and I am receiving the aforesaid amounts with full understanding that I am to receive no further amount whatever, it being my father's desire to make the payment before his death in order that I may have the benefit of the money and receive the income from same. This 28th day of July, 1943. NANCY PRICE DAVIS (Seal)" The due execution of each instrument was acknowledged before a Notary Public.

The personal representatives of J. W. Price, Sr., Nannie K. Price, his widow, and Robert D. Price, one of his sons, have requested that they be instructed by the court as to the legal effect of these contracts in order that they may know how to proceed with the administration of the estate.

Bert A. Price, incompetent, through his guardian and wife, Edna J. Price, and Edna J. Price, individually, and the remaining two sons, James P. Price and John W. Price, Jr., together with their respective wives, filed answers. In all these answers the foregoing defendants allege the validity of the contracts entered into between their father and his four daughters, and further allege that the appellants and each of them are estopped to deny the validity of said contracts.

Gertrude Price and Katie Price Oliver, two of the daughters who entered into contracts with their father, J. W. Price, Sr., together with William Oliver, husband of Katie Price Oliver, filed answers in which they request the court to find that such contracts are valid and binding

on them and the estate of their father. Each alleges in her answer that: "At the time she entered into such contract she felt that same was fair and reasonable to her; that it represented an equal distribution of her father's estate at that time."

The appellants filed an answer in which, among other things, they allege that their father made subsequent agreements with them which negatived and rendered null and void the agreements entered into between him and them in July 1943.

This cause was heard on the pleadings and the trial judge held that Nancy Price Davis, Mamie Price Miley, Katie Price Oliver and their respective husbands, and Gertrude Price are barred from participating in the estate of J. W. Price, Sr., by the contracts referred to herein.

Judgment was accordingly entered and the personal representatives of J. W. Price, Sr. directed to proceed to administer and distribute the estate in accord with the judgment. Nancy Price Davis and her husband, Joe A. Davis, and Mamie Price Miley, appeal, assigning error.

*Allen D. Ivie, Jr., and Deal, Hutchins & Minor for appellants.*

*Price & Osborne and J. C. Johnson, Jr., for appellees Nannie K. Price and Robert D. Price.*

*R. J. Scott and A. D. Folger, Jr., for appellees James P. Price and wife, Edith Price, John W. Price, Jr., and wife, Gladys Price.*

*Dixon & Dark and Ike F. Andrews for appellee Edna J. Price, individually, and guardian of Bert A. Price.*

DENNY, J.  The question posed for determination on this appeal is simply this: Are the written agreements executed by the four daughters of J. W. Price, Sr., referred to hereinabove, enforceable and binding upon the respective parties, and are they estopped from further participation in the estate of J. W. Price, Sr., deceased?

In an opinion rendered by this Court in June 1859 in the case of *Cannon v. Nowell,* 51 N.C. 436, *Ruffin, J.* (formerly *Chief Justice*), said: "Heirs take by positive law when the ancestor dies intestate and the course of descents cannot be altered by words excluding particular heirs, or by any agreement of parties." The appellants are relying upon this decision for a reversal of the judgment entered below.

The above action was one at law. In December 1859 in the case of *McDonald v. McDonald,* 58 N.C. 211 (5 Jones Eq.), 75 Am. Dec. 434, in which Colin McDonald, the plaintiff, sought to set aside a written assignment, executed by him in consideration of the sum of $1,000.00, of all his right, title and interest that he had or might have in the property or estate of Margaret McDonald, as her heir or next of kin, to Daniel McDonald. The Court held that Colin McDonald "did not

have anything which he could assign or transfer to another, either in law or in equity; but he had a right to make a contract to convey whatever interest he might in the future have in his cousin's property; and such a contract, when fairly made upon a valuable consideration, the Court of Chancery will enforce whenever the property shall come into his possession." *Mastin v. Marlow*, 65 N.C. 696; *Watson v. Smith*, 110 N.C. 6, 14 S.E. 640, 28 Am. St. Rep. 665; *Wright v. Brown*, 116 N.C. 26, 22 S.E. 313; *Taylor v. Smith*, 116 N.C. 531, 21 S.E. 202; *Brown v. Dail*, 117 N.C. 41, 23 S.E. 45; *Vick v. Vick*, 126 N.C. 123, 35 S.E. 257; *Boles v. Caudle*, 133 N.C. 528, 45 S.E. 835; *Kornegay v. Miller*, 137 N.C. 659, 50 S.E. 315, 107 Am. St. Rep. 505.

In the case of *Mastin v. Marlow, supra,* decided in 1871, this Court held, "The power of an heir expectant to bind himself by contract in regard to what may descend to him by the death of the ancestor is taken to be settled."

In *Boles v. Caudle, supra,* the Court held that where a contract to convey an interest or expectancy in property is based on a fair consideration, is not procured by undue influence and its enforcement will not be oppressive, if it has been partially performed, its specific performance will be decreed. However, *Connor, J.,* made this salutary statement in commenting upon such contracts: "Contracts for the sale of expectancies and drafts upon the future are not favorites of courts of equity, and will be sustained only when shown by those claiming under them that they are entirely fair and free from any vitiating element. Children should not be encouraged to spend their inheritance in advance, or to speculate upon the death of their fathers. It may be that in these days the evil effects of living upon the future demand a stricter investigation by the courts of contracts of this character. In addition to the evil effect upon the habits and mode of life of the people, such contracts are calculated to weaken the bonds of affection and degrade the most sacred relations of life to a mere pecuniary basis."

While the case of *Cannon v. Nowell, supra,* was decided nearly 97 years ago, it has never been followed. In fact, prior to this appeal, in so far as we have been able to find, it has been cited only once and that was in the case of *In re Reynolds,* 206 N.C. 276, 173 S.E. 789, in which this Court merely referred to the fact that the petitioner contended that the Forsyth judgment and decree in effect changed the infant's status so as to prevent her participation in the testamentary trust set up by her grandfather and grandmother, and cites *Cannon v. Nowell, supra.* The only comment the Court made with reference to the *Cannon case* was as follows: "In 28 A.L.R., p. 433, this case is placed under the minority rule." The Court did not bottom its decision in the *Reynolds case* on *Cannon v. Nowell, supra.*

We think the cases of *Allen v. Allen,* 213 N.C. 264, 195 S.E. 801, and *Coward v. Coward,* 216 N.C. 506, 5 S.E. 2d 537, are in accord with the majority rule on this subject.

In 16 Am. Jur., Descent and Distribution, section 152, page 932, *et seq.,* it is said: "The majority rule is that a release by· an heir or distributee, made to the ancestor before the latter's death, where supported by an advancement to the heir or distributee or other consideration and freely and fairly made, is binding on the heir or distributee. The mere fact that the sum which the prospective heir receives from his ancestor in consideration of his agreement to release the latter's estate from all claim which he might have as heir against it proves to be of less value than the amount which he would have received as heir, in the absence of such an agreement, will not defeat the effect of the release as a bar to his participation in the distribution or partition of the estate after the ancestor's death," citing numerous authorities.

Likewise, in 26 C.J.S., Descent and Distribution, section 62, page 1085, *et seq.,* the majority rule is stated in the following language: "It is held by the weight of authority that the release of an expectant share to an ancestor, fairly and freely made, in consideration of an advancement or for other valuable consideration, ordinarily excludes the heir from participation in the ·ancestor's estate at his death. It is necessary that the person executing the release was at the time competent to contract, that the release was not obtained by means of fraud or undue influence, and that the instrument or transaction in question be sufficient to constitute a release or a contract creating a bar; and the burden of proving want of consideration for the release is on the party asserting such want. . . . An oral promise by the ancestor to ignore or disregard the release is void and unenforceable where the promise was made after the execution of the release and without a consideration."

In *Allen v. Allen, supra,* T. W. Allen and his wife, E. J. Allen, the father and mother of the plaintiff J. W. Allen and the defendants, and grandparents of the plaintiffs other than J. W. Allen, agreed to pool their real estate and to divide it among their children before they died. Deeds were executed to each of the children, but only those executed to their son J. W. Allen and their daughter Hester V. Hendricks were delivered. The deeds executed to the other children were placed in the safe of T. W. Allen and instructions were given to one J. W. Davis, who had access to the safe, to deliver the deeds at the death of the grantors, it being a part of the agreement of division that the grantees in said deeds should not receive their respective shares in the division until after the death of the grantors. This Court held these latter deeds were ineffectual to pass title since they were deeds of gift and not delivered and recorded within the time required by law (*Allen v. Allen,* 209 N.C.

744, 184 S.E. 485). J. W. Allen and the children of Hester V. Hendricks, deceased, contended that they had a right to share in the estate of the grantors notwithstanding the fact that T. W. Allen and Hester V. Hendricks, mother of the plaintiffs other than T. W. Allen, had accepted deeds which purported to be their full share of the real estate owned by their father and mother.

Barnhill, J., now Chief Justice, in speaking for the Court in the above case, pointed out that whether there was a division of the lands belonging to T. W. Allen and E. J. Allen among their children was not the decisive feature of the case, but that the controlling feature was the fact that deeds were tendered to J. W. Allen and Hester V. Hendricks for tracts of land belonging to Mrs. Allen as representing the full share of the respective grantees in the lands of both their parents, and held that since they had accepted the deeds as representing their full share of the lands belonging to their father and mother, they were estopped from further participating in the real estate owned by their parents.

In the case of Coward v. Coward, supra, William C. Coward and his wife, Mary C. Coward, entered into an agreement to pool their real estate holdings and make a joint division thereof among their children. Deeds were executed and delivered to four of the seven children. The grantors never executed deeds to three of their daughters for the reason such daughters were in no immediate need of land. Mary Coward, the mother of Claude Coward, died in 1930; Claude Coward died in 1931. His children contended that they were entitled to share in the unconveyed real estate owned by Mary Coward at the time of her death. This Court held the facts were sufficient to estop Claude Coward, were he alive, from asserting any claim in the land of his mother, and his children being his sole heirs at law were estopped, as were their ancestor, to assert any claim to a share in the lands of Mary Coward.

In the instant case, there is no contention or allegation to the effect that the contracts entered into by the four daughters of J. W. Price, Sr., were not fair or based on a consideration, which, at the time of their execution, did not represent a fair division of the entire estate, both real and personal, of the ancestor. There is no allegation or contention of bad faith, overreaching or fraud on the part of the ancestor, or disability of any one of the four daughters.

We do not think that in order for a contract of this character to be valid the ancestor must make a division of all his property and distribute it among his children or those who represent them, thereby leaving himself penniless. A parent might be moved to give one or more of his children their full share of his estate because of their financial need, while retaining the remainder of his estate for his own support and maintenance. However, if there is evidence that the consideration

given at the time the release was executed was grossly inadequate, or that it·was procured by fraud or undue influence, such consideration should be treated only as an advancement and not as an estoppel. *Mastin v. Marlow, supra.*

In the light of the facts disclosed on this record, the judgment of the court below is

Affirmed.