L. E. STEWART AND WIFE, NONIE D. STEWART; FANNIE BESSIE POPE (WIDOW), ANNIE S. SMITH (WIDOW), EVELYN S. WILSON (WIDOW), NANCY S. COLLINS (DIVORCED) ; WILLIE STEWART AND WIFE, BANNA D. STEWART; RAYMOND STEWART AND WIFE, FRANCES GREGG STEWART; EARL STEWART (SINGLE) ; ROBERT YATES AND WIFE, LILLIAN C. YATES; CLAUDE YATES AND WIFE, VERGIE W. YATES; MARTHA RONEY AND HUSBAND, LEM RONEY; ANNIE WOOSLEY AND HUSBAND, W. JESSE WOOSLEY; MILDRED HESTER (WHO IS DIVORCED), EUNICE M. HAMLETT AND HUSBAND, ALEX D. HAMLETT; ROBERT H. MURPHY, JR. AND WIFE, CAROLYN B. MURPHY, THOMAS M. HOBBS; JAMES W. MURPHY AND WIFE, MARY A. MURPHY; NANCY GREY W. COMPTON AND HUSBAND, COY COMPTON, JR. v. GRACE M. McDADE.

(Filed 11 April, 1962.)

Stewart *v.* McDade.

### 1. Trial § 40—

Where the only issues of fact raised by the pleadings relate to whether plaintiffs are all the heirs of deceased and whether defendant executed the instrument in question, two issues addressed respectively to these two questions are sufficient, and, the effect of the instrument being a question of law for the court, are sufficient to support a judgment adjudicating the rights of the parties under the instrument.

### 2. Contracts § 12; Wills § 66½—

Where the terms of a release of any interest in an estate are unambiguous, the legal affect of the language of the instrument is a question of law for the court.

### 3. Wills § 66½—

The requirement that parties relying upon a release by a prospective devisee of his share in an estate must prove that the release was not obtained by means of fraud or undue influence, is a policy of the law to protect heirs apparent and to prevent the improvident dissipation by children of a prospective inheritance, and does not apply where the person executing the release is a stranger to the blood of the prospective testator, and in such instance the burden is upon the person signing the release to allege and prove as affirmative defenses, gross want of consideration or fraud or undue influence if he would avoid the effect of the release.

### 4. Same—

Where a stranger to the blood of the prospective testator has obtained a favored position so that it is apparent that the prospective testator may will property to her, a release of any possible benefit under the will of the prospective testator, executed for a valuable consideration, will be upheld even though the subject of the release is a mere possibility, especially when it appears that the prospective testator lacked mental capacity at the time he executed the will.

### 5. Insane Persons § 4—

It is the positive duty of a guardian to preserve the estate of his incompetent, and therefore it is proper for the guardian to institute an action to set aside on the ground of mental incapacity a deed executed by his incompetent to the defendant, and where in such action the guardian obtains a reconveyance of the land to the estate and at the same time a release from the defendant of any benefits she might receive by testamentary gift from the incompetent, as a settlement approved by the court, the defendant may not thereafter contend that the guardian was without authority to pay a valuable consideration for such release.

### 6. Wills § 66½—

A release renouncing any bequest and devise in a purported will of a prospective testator "or any other testamentary disposition" by the prospective testator, is sufficiently broad to cover not only the will then executed by the prospective testator but any other will executed by him.

**7. Declaratory Judgment Act § 1—**

> An action to determine whether defendant executed a release of testamentary benefit from a prospective testator, and the effect of such release, presents a real controversy when the prospective testator has died and a will making testamentary disposition to defendant has been probated, and therefore such action may be maintained under the Declaratory Judgment Act.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Clark, J.,* March 27, 1961 Civil Term of ORANGE.

This is a civil action instituted pursuant to the Declaratory Judgment Act (G.S., Ch. 1, Art. 26) to determine what right, title or interest, if any, defendant Grace M. McDade has in and to the estate of James Arthur Stewart, deceased, (hereinafter referred to as Stewart).

The allegations of the complaint are summarized as follows: Plaintiffs are all of the heirs at law of Stewart. On 11 January 1952 Stewart conveyed by warranty deed all his real estate, consisting of 177 acres, to defendant, and on the same date executed a paper writing purporting to devise and bequeath all his property to defendant and to name her as executrix. And on 7 August 1952 he executed another purported will to the same effect. On 11 August 1953 Stewart was judicially declared incompetent for want of understanding to manage his affairs, and a guardian was duly appointed for him. On 20 August 1953 the guardian employed counsel to institute an action to set aside the deed from Stewart to defendant on the ground that Stewart lacked mental capacity to execute it. On 24 September 1953 defendant, to terminate litigation, conveyed the real estate back to Stewart, and executed a release, upon a valuable consideration, renouncing her right to qualify under the purported will, and transferring and quitclaiming to the estate of Stewart and to his heirs and their assigns any right she might have under the purported will or any other will made by Stewart. The transaction with respect to the release was approved by the court in a special proceeding instituted for that purpose. Stewart died on 25 May 1959, an inmate of the State Hospital at Butner. The purported will of 7 August 1952 was filed for probate, but defendant did not qualify as executrix. Before the death of Stewart his guardian instituted a proceeding to sell the real estate to make assets to pay debts, but the sale was not consummated because of Stewart's death. Defendant has no interest in Stewart's estate, and the estate is the property of his heirs, subject to the payment of debts and other obligations.

Defendant, answering, admits that she conveyed the real estate back to Stewart to avoid litigation, and that Stewart on 7 August 1952 executed a will which was filed for probate after his death. She denies the other material allegations of the complaint, and specifically denies that she executed the release.

Thereafter defendant demurred on the ground that "the complaint does not state facts sufficient to constitute a cause of action against defendant." The demurrer was overruled.

The parties stipulate the following:

"That on January 11, 1952, James Arthur Stewart executed a deed to the defendant Grace M. McDade, conveying to her his 177-acre tract of land in Orange County . . . and thereafter, on the same date, that is, January 11, 1952, James Arthur Stewart executed a written instrument by which he purported to will, devise and bequeath all of his property, real and personal, to the defendant Grace M. McDade, and to appoint her executrix of his estate.

"That on August 7, 1952, James Arthur Stewart executed another written instrument in which he purported to will and devise all of his property in fee simple to the defendant, Grace M. McDade, and to name her executrix of his estate, which was filed for probate in the Office of the Clerk of the Superior Court of Orange County on June 24, 1959. . . .

"That on August 20, 1953, the law firm of Spears & Hall was duly employed to institute a civil action in the Superior Court of Orange County against the defendant in this action, Mrs. Grace M. McDade, for the purpose of setting aside the deed which James Arthur Stewart had executed on January 11, 1952. . . .

"That on September 24, 1953, in order to terminate this litigation to have her deed set aside, the defendant Mrs. Grace M. McDade executed a deed conveying the 177-acre tract of land back to James Arthur Stewart. . . .

"That James Arthur Stewart died May 25, 1959, seized and possessed of the 177-acre tract of land. . . ."

The instruments and proceedings referred to in the complaint, copies of which were attached thereto as exhibits, were admitted in evidence. Plaintiffs offered evidence tending to show, among other things, execution of the release by defendant, payment of consideration therefor amounting to $2975, and that plaintiffs are all of the heirs at law of Stewart.

Defendant offered evidence tending to show she did not execute the release, she made no agreement with anyone respecting the wills of Stewart, and she received $2600 for deeding the land back to him.

Issues were submitted to and answered by the jury as follows:

"1. Are the plaintiffs all the heirs at law and spouses of heirs at law of James Arthur Stewart, deceased? Answer: Yes.

"2. Did the defendant Grace McDade, for valuable consideration, sign, execute and deliver the instrument (release) dated September 24, 1953, recorded in Deed Book 148 at page 251, in the office of the Register of Deeds of Orange County, and designated as Plaintiffs' Exhibit 'B'? Answer: Yes."

Judgment was entered decreeing:

". . . (T)hat the defendant Grace M. McDade . . . is barred and estopped from claiming or taking any right, title or interest whatever in the estate of James Arthur Stewart, deceased, or under the last will and testament of James Arthur Stewart, deceased, probated and filed in the Office of the Clerk of the Superior Court of Orange County. . . .

". . . (T)hat plaintiffs are all of the heirs at law . . . of James Arthur Stewart, deceased.

". . . (T)hat the Clerk of the Superior Court of Orange County . . . is hereby authorized and directed to proceed with his duties in connection with the administration of the estate of James Arthur Stewart, deceased, as provided by law."

Defendant appeals.

*Bonner D. Sawyer; Reade, Fuller, Newsom & Graham for plaintiffs.*

*Max D. Ballinger for defendant.*

MOORE, J. Defendant's assignments of error pose the general question, whether or not the matters decided by the jury's verdict are sufficient predicate for the relief granted by the court in the judgment.

Issues arise on the pleadings, and their formation must have regard to the phases of the evidence pertinent thereto. *Brown v. Daniel,* 219 N.C. 349, 352, 13 S.E. 2d 623. Exclusive of matters settled by stipulation, the only issues of fact raised by the complaint and answer in the case at bar are those which were submitted to and answered by the jury. Defendant set up no affirmative defenses. The execution of the release having been established by the verdict, its force and effect was a question of law for the court.

Defendant contends that, notwithstanding the jury's findings that she executed the release for a valuable consideration, the complaint fails to state facts sufficient to constitute a cause of action and the demurrer should have been sustained.

In the first place, defendant asserts that the subject of the release is a mere possibility and a contract with respect thereto is against public policy and void. Under the old practice an assignment of a mere expectancy of an heir apparent could not be enforced in an action at law. *Cannon v. Nowell,* 51 N.C. 436; *Fortescue v. Satterthwaite,* 23 N.C. 566. But equity gave effect to the assignment of a mere expectancy or possibility as a contract, in the absence of proof of fraud or imposition. *Mastin v. Marlow,* 65 N.C. 695; *McDonald v. McDonald,* 58 N.C. 211. The present rule in this jurisdiction is clearly stated in *Price v. Davis,* 244 N.C. 229, 93 S.E. 2d 93, in which *Denny, J.* (now *C.J.*) discusses the decisions of this Court bearing on the subject. In *Price* the ancestor had four sons and four daughters. For a specified consideration paid by the ancestor each of the four daughters released to him any and all right to share in his estate. There was no contention that the amounts paid the daughters were not fair shares of the estate. It was held that the releases were binding and the daughters were estopped thereby to claim any part of the estate. The principles involved are fully discussed, and the opinion points out that "There is no allegation or contention of bad faith, overreaching or fraud on the part of the ancestor, or disability of any one of the four daughters."

North Carolina follows the majority rule. 35 N.C. Law Rev. 127 (1956). "If fraud and gross inequality are not present, the consideration for the release will usually be held fair even though its amount may later turn out to be an inadequate share of the estate. The burden of proving want of consideration is on the party asserting said want." *ibid.,* p. 131. The majority rule is stated as follows: "Generally, the release of an expectant share to an ancestor, fairly and freely made, in consideration of an advancement or for other valuable consideration, excludes the heir from participation in the ancestor's estate at his death. It is necessary that the person executing the release was at the time competent to contract, that the release was not obtained by means of fraud or undue influence, and that the instrument or transaction in question be sufficient to constitute a release or a contract creating a bar; and the burden of proving want of consideration for the release is on the party asserting such want." 26A C.J.S., Descent & Distribution, s. 622, pp. 656, 657. In the case of *Re Edelman,* 82 P. 962 (Cal. 1905) it is said: "It is true that where the heir sought to transfer or convey his interest in the estate of an ancestor to a third person, equity, before it would give effect to such transfer, required evidence from that third person of the good faith and fairness of the transaction, the very apparent reason being that designing persons should not take advantage of the improvidence or penury or inexperi-

ence of one to strip him of his prospective inheritance. An additional reason was that such a transfer, made without the knowledge of an ancestor, was in a certain sense a fraud upon him. Both these reasons are eliminated, however, and with their elimination the rule ceases, when the release is made to the ancestor himself; for, in the first place, since he has the right absolute to disinherit, he cannot be accused of taking advantage of the heir, and, in the second place, as the release is made to him he is not in ignorance of the fact, and thus could not be deceived into leaving his property to one to whom he never intended it should go. Therefore, where such a release is made to the ancestor the rule requiring the party relying on it to prove its fairness is no longer in force." *A fortiori*, where, as in the instant case, the releasor and expectant devisee is a stranger and not an heir apparent to the anticipated testator, and the release is to the latter or his estate and for a valuable consideration, the burden is upon the former to allege and prove gross want of consideration, fraud or oppression, if estoppel is to be defeated. Defendant herein alleges none of these and pleads no affirmative defense.

The policy of the law, of which defendant speaks, is for the protection of heirs apparent, and against children spending their inheritance before it comes to them. *Price v. Davis, supra; Kornegay v. Miller*, 137 N.C. 659, 50 S.E. 315; *Boles v. Caudle*, 133 N.C. 528, 45 S.E. 835. It does not extend to a stranger. Where, by reason of close association and friendship, a stranger is placed in a favored position with another and it is apparent that the latter might leave the former a legacy, and the former releases to the latter or his estate upon a valuable consideration the expected gift, the release will work an estoppel as to any gift to the stranger under the will of the other, especially when it is strongly suggested that the testator lacked mental capacity to make the will at the time of its execution.

Defendant further contends that it was beyond the scope of the guardian's authority to expend assets of his ward's estate to obtain a release from defendant for the benefit of the heirs. This argument misconceives the nature of the transaction. The guardian has the positive duty to preserve the estate of his ward. In the performance of this duty Stewart's guardian instituted an action to set aside the deed Stewart had made to defendant, for want of mental capacity on Stewart's part to execute a deed. Defendant freely admits that she deeded the property back to end litigation. The execution and delivery of the deed and release by defendant constituted one transaction, all had on the same date. It was hardly to be expected that the guardian, knowing that a purported will had been executed, would merely accept the deed as a final settlement of the matter, when the

deed might be set at naught almost immediately by the possible death of the ward. The transaction was duly approved by the court.

Though the contracting parties did not know that a purported will had been executed on 7 August 1952, the contract is sufficient in terms to release the rights and interests of defendant under any will Stewart might execute. It provides that "the undersigned, Grace M. McDade, does hereby forever renounce any bequest and devise made to her in said purported will or paper writing, or any other testamentary disposition made to her by the said J. A. Stewart at any time, and any right that she may have to qualify as executrix of the Estate of J. A. Stewart, and that she will not at any time in the future make or assert any claim as legatee and devisee of his estate, and does hereby also assign, set over, transfer, release, quitclaim, and convey and does by these presents assign, set over, transfer, release, quitclaim and convey unto the Estate of J. A. Stewart and his heirs and their assigns, all right, title and interest that she may have at any time in the future as legatee and devisee of the said J. A. Stewart in and to any and all personal and real property of which the said J. A. Stewart may die seized and possessed."

Plaintiffs were entitled to have this action determined under the Declaratory Judgment Act. G.S. 1-254. There is a real controversy. The heart of the case is the determination of the effect, meaning and validity of the release and the rights of the parties thereunder. In *Trust Co. v. Henderson,* 226 N.C. 649, 39 S.E. 2d 804, it was held that the court might determine the validity of an assignment by a legatee in a suit by the executor under the Act.

Questions raised by the assignments of error and not discussed herein are without merit and will not be sustained. In the trial below we find

No error.

SHARP, J., took no part in the consideration or decision of this case.