STATEMENT BY THE COURT.
This suit is a consolidation of two actions, one in ejectment by appellant and one by the administrator of the estate to recover personal property from appellees, who in their answer claimed all the property, both real and personal, of the decedents, Taylor Boyce and his wife, Dora Boyce, under an agreement alleged to have been performed by them that the property should be theirs at the death of the owners. Upon request, the cause was transferred to equity.
R. "Taylor" Boyce died in Yell County at an advanced age, being the owner at the time of 80 acres of land subject to the contract made with appellees. Boyce and his wife had resided for many years on the farm, and had no children of their own, but during the infancy of Nettie Richards took her into their home, and she was legally adopted by Taylor Boyce. She grew up and *Page 969 
married Johnnie Richards, and they moved into a place of their own. The Boyces continued to reside on the land in controversy, and the appellees visited them frequently. In January, 1928, Taylor Boyce, who was suffering from a stroke of paralysis and had been severely burned and was virtually helpless, and his wife, also in failing health, made a contract with appellees, Nettie and Johnnie Richards in consideration that appellees were to move in their home and take care of both of them, nursing, caring for and supporting them, and upon their deaths were to receive all their property. Appellees left their home in accordance with the agreement, and moved into the house with Taylor Boyce and his wife, and continued to nurse and care for them until their deaths. Taylor Boyce died in October, 1928, and his wife in December, 1928. Appellees continued in possession of the property, both real and personal, after the death of Taylor Boyce and his wife, and on April 6, 1929, appellant brought an action of ejectment against appellees, and the administrator of the estate of Dora Boyce brought a replevin suit for the personal property. Appellees filed an answer in each case setting up their contract or agreement with the Boyces to live with and take care of and support them during their lives for their property, which was to be given to them upon the death of the Boyces. They alleged they had performed their agreement, prayed specific performance of the contract and removal of the cause to equity.
Appellees each testified about the agreement made with Boyce and his wife, and that they had fully performed it and continued in possession of the property after the death of both Boyce and his wife, after taking care of them until the death of each in accordance with their contract.
Many other witnesses, neighbors and friends, testified that they had heard Taylor Boyce and his wife frequently say they had agreed to give their property to appellees at their death for their coming and living with them and taking care of and supporting them. That they *Page 970 
also expressed pleasure at the care shown and the service rendered by appellees, some of the witnesses saying that they were present and that appellees were as considerate for and took as good care of Boyce and his wife as if they had been their own parents.
Witnesses testified that they went to see Mrs. Boyce several times after the death of Mr. Boyce, and she told them that Johnnie and Nettie were going to take care of her the rest of her life. One stated that appellant had not visited the Boyces in 19 years, and did not attend the funeral of Mrs. Boyce. Another stated that she visited Mrs. Boyce in her last sickness often after Mr. Boyce died in the fall of 1928, and that appellees were both there, and that she remained for a week and during that time Mrs. Boyce told her that she had given all her property to Nettie and Johnnie Richards. "I know they were both attentive to Mr. and Mrs. Boyce and did everything they could; never saw parents own children do more than Nettie and Johnnie did for them."
W. C. Christy stated he had lived long in the county, and had served as justice of the peace for more than 20 years; that he knew R. T. and Dora Boyce, his wife, for over 20 years; that at one time Mr. Boyce was not very well pleased about Nettie and had made a will, but that later they became reconciled; that in January, 1928, when he had been going twice a day to see Boyce, dressing his burns and helping take care of him, Dora Boyce informed him that they had decided to give all their property to Nettie and Johnnie Richards provided they would come and live with them and take care of them during the remainder of their lives. She asked witness to have his wife write them to that effect that day, but he informed her that this was a very important matter, and that it was the proper thing to do, and that she was the proper party to write the letter and not witness wife. "She wrote the letter herself and mailed it in my box. I live just across the road from Mr. and Mrs. Boyce's home, and have lived there for the past 8 years." Nettie *Page 971 
and Johnnie came about January 12th, remained there and took care of the old folks. In the spring they left a little while but got up wood and fixed up everything convenient for Mrs. Boyce, and it was mutually agreed that Johnnie could go back and work a while at his job. About July 1st they both returned and remained there caring for the old folks, and attending to everything until the death of both of them. "I know they took good care of them in their last sickness and continued to live there on the place after their deaths. I know it was generally understood by all the neighbors that this contract had been made. I live within 100 yards of the Boyce residence and saw them daily, and I know Johnnie and Nettie carried out their contract; and the Boyces told me an own son or daughter could not have done more."
No testimony was introduced on behalf of appellant. The court found the issues in favor of appellees, and decreed a specific performance of the contract accordingly, from which this appeal is prosecuted.
(after stating the facts). The testimony is virtually undisputed that Boyce and his wife were both old and infirm, that they invited appellees to come to their home, live with and take care of them the remainder of their lives, agreeing to leave them their property at their death, in consideration of the service, and that the agreement was performed by appellees. It has been frequently held that, upon the showing of the performance of such an agreement, the persons performing it are entitled to a specific performance of same against the heirs of the decedents. Hinkle v. Hinkle, 55 Ark. 583,18 S.W. 1049; Naylor v. Shelton, 102 Ark. 30, 143 S.W. 117, Ann. Cas. 1914A, 394; Fred v. Asbury, 105 Ark. 494,152 S.W. 155; Williams v. Williams, 128 Ark. 1, 193 S.W. 82; Speck v. Dodson, 178 Ark. 549, 11 S.W.2d 456.
There is no merit in the contention that the decree is contrary to the weight of the evidence, which is, as already said, virtually undisputed. Appellees moved *Page 972 
from their home upon the written request and invitation of the Boyces, Taylor Boyce having legally adopted Nettie Richards in her infancy, under the agreement that they should have what property the Boyces owned at their death, and, pursuant to the contract and agreement, lived with, took care of and help support them throughout the remainder of their lives. The decree is not only not contrary to the weight of the testimony, but meets the requirement of the rule, being clear, convincing and satisfactory.
We find no error in the record, and the decree is affirmed.