HENRICH, et al, Appellants, v. NEWELL, et al, Respondents

(240 N. W. 327.)

(File No. 7141. Opinion filed January 25, 1932.)

*J. W. Kaye,* of Beresford, and *Alan Bogue,* of Parker, for Appellants.

*Thomas McInerny,* of Elk Point, for Defendants.

RUDOLPH, J.   This action was brought to determine the rights of the parties in and to the S. E. ¼ of section 8, township 95, range 49, Union county, S. D.   The plaintiffs in this action are Maude V. Henrich, Fannie M. Humphrey, Eva R. Holleman, and Florence I. Bradley.   Frederick L. Newell is a party defendant; made such because he refused to become a party plaintiff.   The facts are not disputed.   The controversy is among the heirs of Robert Newell and Martha Newell, deceased.   Robert Newell died intestate in Union county, S. D., on or about December 4, 1903, and Martha Newell died testate in Union county, S. D., on or about the 18th day of October, 1926.   The plaintiffs and defendants are the children of Robert Newell and Martha Newell.   At the time Robert Newell died, he was the owner of an undivided one-half interest in and to the N. E. ¼ of section 17, and S. E. ¼ of section 8, township 95, range 49, Union county, S. D.   Martha, his widow, was the owner of the remaining one-half interest.   The estate of Robert Newell was probated in the county court of Union county, and on the 15th day of February, 1924, prior to the closing of the estate of Robert Newell, the children of Robert Newell, being the parties to this action, and Martha Newell, his surviving widow,

entered into an agreement in writing, which in words and figures is as follows:

"This agreement made and entered into this * * * day of February, 1924, by and between the heirs at law of Robert Newell, deceased, witnesseth: That whereas the said Robert Newell died seized and possessed of an undivided one-half interest in the southeast quarter of section eight and the northeast quarter of section seventeen, in township ninety-five, range forty-nine, in Union county, South Dakota, and

"Whereas, the estate of said deceased is now in course of probate in the county court of Union county, South Dakota, and

"Whereas, it is the desire of all of the heirs of the said deceased to wind up and terminate the probating of said estate, and

"Whereas, the said Robert Newell, deceased, left him surviving as his sole and only heirs at law the undersigned, Martha Newell, his widow, who inherited an undivided one-third of the estate of the said deceased, and the undersigned, Charles M. Newell, Maude V. Henrich, Roy A. Newell, Fannie M. Humphrey, Eva R. Holleman, Florence I. Bradley and Frederick L. Newell, his children, who inherited an undivided two-thirds of the estate of said deceased in equal shares, and

"Whereas, the said Martha Newell, widow, and the said Maude V. Henrich, Fannie M. Humphrey, Elva R. Holleman, Florence I. Bradley and Frederick L. Newell, are about to convey by quit-claim deed, to the said Charles M. Newell and Roy A. Newell, all their interest in the northeast quarter of section seventeen, above described, and the said Charles M. Newell and Roy A. Newell, are about to convey to Maude V. Henrich, Fannie M. Humphrey, Eva R. Holleman, Florence I. Bradley and Frederick L. Newell, all their interest in the southeast quarter of section 8, above described, by quit-claim deed;

"Now, therefore, in consideration of the execution and delivery of the said quit-claim deeds above referred to, and in consideration of the distribution of the estate of said deceased under the law of succession of the state of South Dakota, as modified by the execution and delivery of the said quit-claim deeds above referred to, and in consideration of the mutual benefits to be derived by all of the parties hereto, it is hereby mutually agreed as follows, to-wit:

"(1) That in the decree of distribution of the estate of Robert Newell, deceased, the interest of said estate in the northeast quarter of section seventeen, township ninety-five, range forty-nine, Union county, South Dakota, shall be set over and distributed to Charles M. Newell and Roy A. Newell in common.

"(2) That the interest of said estate in the southeast quarter of section eight, township ninety-five, range forty-nine, Union county, South Dakota, shall be set over and distributed, the one-third thereof unto Martha Newell, widow of said deceased, and the two-thirds thereof in equal shares unto Maude V. Henrich, Fannie M. Humphrey, Eva R. Holleman, Florence I. Bradley, and Frederick L. Newell.

"(3) All the parties to this agreement agree that Martha Newell, widow of said deceased, shall have the possession, use, income, rents and profits of the southeast quarter of section eight, township ninety-five, range forty-nine, Union county, South Dakota, during the period of her natural lifetime. And the said Martha Newell agrees that she will not sell, mortgage, or otherwise encumber said premises, unless it becomes necessary for medical attention or for her care and support by reason of illness.

"(4) Upon the death of the said Martha Newell, widow of said deceased, and upon the distribution of her estate, the said southeast quarter of said section eight, above referred to, shall be set over and distributed to Maude V. Henrich, Fannie M. Humphrey, Eva R. Holleman, Florence I. Bradley, and Frederick L. Newell, in equal shares, share and share alike, and if at said time any of them shall be deceased, then the share of said decedent shall go to the legal heirs of said decedent.

"(5) The said Charles M. Newell and Roy A. Newell hereby expressly agree that neither they, nor their assigns or heirs shall share in the distribution of the estate of the said Martha Newell in the said southeast quarter of the said section eight, township, ninety-five, range forty-nine, Union county, South Dakota.

"In testimony whereof, we have hereunto set our hand * * * and affixed our seal the day and year first above written."

Pursuant to this agreement, the plaintiffs, together with the defendant Frederick L. Newell, and their mother, Martha Newell, executed and delivered to the defendants Charles M. Newell and Roy A. Newell a quitclaim deed conveying to Charles and Roy all

their right, title and interest in and to the N. E. ¼ of section 17 above described. Charles and Roy executed and delivered to the plaintiffs and the defendant Frederick L. Newell, a quitclaim deed transferring and quitclaiming all their right, title, and interest in and to the S. E. ¼, section 8, above described. After the death of their mother, Charles and Roy leased and rented the S. E. ¼ of section 8 from the plaintiffs and defendant Frederick L. Newell, for a period of three years prior to the commencement of this action, agreeing to pay as rental the sum of $1,000 per year. Subsequetly, Charles and Roy refused to comply with that part of the contract above set out, wherein they had agreed that neither they nor their assigns would share in the distribution of the estate of Martha Newell in the S. E. ¼ of section 8, and are now claiming and asserting that they are each entitled to an undivided two twenty-firsts interest in and to the S. E. ¼ of section 8, by virtue of the terms of the last will and testament of said Martha Newell. Martha Newell, the deceased mother, on the 23d day of August, 1924, made a last will and testament as follows:

"I, Martha Newell, of Beresford, South Dakota, hereby make, declare and publish this my last will and testament in manner and form as follows:

"First: After the payment of my funeral expenses and the expenses of my last illness I dispose of all my property as follows: unto my children, Charles M. Newell, Maude V. Henrich, Roy A. Newell, Fannie M. Humphrey, Eva R. Holleman, Florence I. Bradley and Fredrick L. Newell, I give, devise and bequeath the land in Buena Vista County, Iowa, or the proceeds of the same if it has been sold, my house and lot in Beresford, Union County, South Dakota, and any other property of which I may die possessed share and share alike.

Second: While I have no inducement to offer my son, Charles M. Newell, except my good wishes in the matter I should very much like to see him buy our old home farm in Alcester Township, Union Cunty, South Dakota.

"Third: I hereby nominate and appoint my son, Charles M. Newell, as the executor of this my last will and testament and request that he may not be required to give any bonds upon qualifying.

'Witness my hand and seal this 23rd day of August, A. D. 1924."

The trial court entered judgment dismissing the complaint of the plaintiffs. This is an appeal from the judgment. The error assigned directly places before this court the effect of the agreement entered into on the 15th day of February, 1924, between the parties to this action and their mother, Martha Newell.

It is the contention of the respondents that the agreement entered into between these parties, together with their mother, Martha Newell, in so far as it relates to Roy and Charles waiving any interest that they may have in their mother's estate in the S. E. ¼ of section 8 is not binding upon Roy and Charles, and they are therefore entitled to share in the estate of their mother to the same extent as had the agreement never been entered into. The respondents rely, in the main, upon certain sections of our Code and two decisions of this court. The sections of the Code relied upon are section 285, Rev. Code 1919, which provides as follows: "A mere possibility, such as the expectancy of an heir apparent is not deemed an interest of any kind"; and section 520, Rev. Code 1919, which provides as follows: "A mere possibility, not coupled with an interest, cannot be transferred." Respondents contend that under section 520 the children of Martha Newell could not enter into any binding contract during the lifetime of Martha Newell for the distribution of her estate after her death, and, further, that at the common law a mere possibility, such as the expectancy of an heir, was not regarded as such an existing interest as to be the subject of a sale, or capable of passing by assignment, devise, or gift, or to be attached by creditors. That by sections 285 and 520 above quoted, the rule of the common law has become statutory law in this state; that the contract in question contravenes this statutory law and is therefore a nullity. The two South Dakota decisions relied upon by respondents are In re Thompson's Estate, 26 S. D. 576, 128 N. W. 1127, 1130, Ann. Cas. 1913B, 446, and Avon State Bank v. Commercial & Savings Bank, 49 S. D. 575, 207 N. W. 654, 44 A. L. R. 1462.

Appellants contend that Roy and Charles have taken and retained the benefits under the contract, and that they are now estopped from questioning its validity. The appellants rely in main upon the case of Evenson v. Webster, 3 S. D. 382, 53 N. W. 747, 748, 44 Am. St. Rep. 802, and certain decisions of the Supreme Court of the state of California. Principally the case of In re

Garcelon's Estate, 104 Cal. 570, 38 P. 414, 417, 32 L. R. A. 595, 43 Am. St. Rep. 134.

In the instant case, Roy and Charles have, in part consideration for certain benefits derived under the contract, agreed that they would not share in the distribution of the estate of their mother, Martha Newell, in the S. E. ¼ of section 8. The mother was living at the time the contract was executed, and was a party to the contract. This court in the early case of Evenson v. Webster, supra, in construing the effect of the agreement set out in the opinion in that case, wherein Marie Anne Evenson in consideration of receiving several articles of personal property agreed with her ancestor that, "She and her heirs shall never privately or by law make no more charges against the said estate except the fifty dollars mentioned in the will," said, "We think by the document signed by the plaintiff she is estopped to maintain this action, or to claim or assert any interest in the property"; and further, "We think the learned court was therefore correct in holding that this agreement estopped her from claiming this property from the grantee of Larson, and that it in effect was a release of her interest in the estate." These statements of this court, in our judgment, aligned this court with the majority rule respecting releases to ancestors by heirs expectant. This majority rule is stated in an extensive note in 28 A. L. R. 428, as follows: "The weight of authority is that an agreement between a prospective heir and his ancestor by which the former promises, in effect, to accept certain property or other valuable consideration then given him by his ancestor as his full share of the latter's estate, and to make no further claim as heir, if freely and fairly entered into, and made in such form * * * as to comply with the Statute of Frauds, is valid and will be enforced by the courts against such heir after the ancestor's death."

There is no further discussion of this subject by this court until the decision in Re Thompson's Estate, supra. Judge Corson, who wrote the opinion in Evenson v. Webster, also wrote the opinion in Re Thompson's Estate. No mention was made of the former case in this latter opinion. It is contended by respondent that the Thompson Case adopted a rule in this state contrary to that announced in Evenson v. Webster. We do not so conclude. In the course of the opinion it was stated: "It will be observed that the

purported release in this case contains no covenant of warranty, and no facts are pleaded which would authorize the respondents to invoke the doctrine of an estoppel." The case involved the effect of an instrument signed by Sam Thompson, wherein he released to his father, Thomas Thompson, in consideration of the sum of $200, all right of inheritance he may have had in his father's estate. However, the contest there was not between Sam Thompson and the other heirs of Thomas Thompson, but a judgment creditor of Sam Thompson was claiming an interest in said estate by virtue of his judgment against Sam Thompson, and the court was seemingly of the opinion that there should be no estoppel under the facts presented. It will be observed that the release in this case was in favor of certain particular persons; namely the plaintiffs and defendant Frederick L. Newell. These parties are now seeking to have the agreement, upon which they relied when they parted with valuable consideration, enforced in a court of equity. In the Thompson Case, the fact was specifically pointed out that the release was not in favor of any particular person; the other heirs of Thomas Thompson were not parties to the agreement, and parted with nothing at the time it was signed. The court further in the Thompson Case, impliedly at least, intimated that such contracts would be held good in a court of equity. The court said, "But in many of the cases cited on behalf of the respondents, while the contract was held invalid at law, it was held good in a court of equity." That this class of contracts might be enforced in courts of equity after the death of the ancestor is further intimated in the Thompson Case by the reliance in the opinion upon the California cases therein cited. The California case, In re Wickersham's Estate, 138 Cal. 355, 70 P. 1076, 1078, 71 P. 437, and In re Ryder's Estate, 141 Cal. 366, 74 P. 993, cited with approval in the opinion in the Thompson Case, adhere to the rule that contracts, such as are here under consideration, are enforceable in courts of equity after the death of the ancestor. In the Wickersham Case, the California court said: "A contract of this character, made on adequate consideration, and otherwise unobjectionable, may be enforced in equity as an agreement to convey, or by way of estoppel or otherwise"; which case was followed by the California court in the case of In re Ryder's Estate, supra. It is important, also to note that the Thompson Case was not decided

upon the effect of the instrument there under consideration, but was turned entirely upon jurisdictional grounds. The opinion, after discussing the effect of the instrument, continued as follows: "But assuming that there may be a question as to the rights of the heirs to the share of Samuel Thompson in the estate of his father, Thomas Thompson, we are of the opinion that the county court had no jurisdiction to determine that question in this proceeding." The opinion regarding the effect of the instrument there under consideration was not therefore the basis of the decision. In view of this fact, we cannot consider the Thompson Case a real precedent to guide us at this time. Further, with regard to the Thompson Case, the annotator in commenting upon this case in Ann. Cas. 1913B, page 451, states: "In passing on the question of the validity of an assignment or release of an expectancy by a prospective heir the courts have not always distinguished clearly between legal effect of the sale of his expectancy by a prospective heir to a stranger or person other than the ancestor, and the legal effect of a release of his expectancy by the heir to the ancestor himself. This apparent confusion of the two transactions is noticeable in the reported case, where the court holds inoperative a release by a prespective heir to his ancestor, and supports its ruling mainly with authorities involving sales rather than releases of expectancy."

The appellants in this case are relying upon the contract and those provisions in the contract, wherein the defendants Roy and Charles agreed not to share in the distribution of the estate of their mother, in so far as the S. E. ¼, section 8, is concerned. This case therefore comes within the classification of a release by an expectant heir rather than a transfer of an expectancy by prospective heir. That these two classes of cases should be kept separate and distinct is well demonstrated in two annotations in the American Law Reports, one in 28 A. L. R. 427, which relates to a release by an heir expectant; the other in 17 A. L. R. 597, which relates to the transfer of an expectancy by prospective heir.

The South Dakota case of Avon State Bank v. Commercial & Savings Bank, supra, involves the attempted mortgage of an interest that a prospective heir expected to receive in his father's estate, and falls within the classification of a transfer of an expectancy by a prospective heir. That case involved the giving of a mortgage by a prospective heir for an antecedent debt, and it was de-

cided that there was nothing upon which an estoppel could be predicated. The court in the opinion saying: "Nor does respondent bring itself under the other ground for permitting the transfer of after-acquired property; namely, the estoppel of the mortgagor to deny his mortgage." We are of the view that the Avon Bank Case is not an authority in this state to the effect that a prospective heir may not, under certain circumstances, be estopped from asserting the invalidity of an agreement to release any interest in the estate of his ancestor.

■ Coming now to the two sections of our statute, namely, section 285 and 520, R. C. 1919, the query arises whether or not these sections are sufficient to invalidate this agreement in a court of equity. It was said in the Thompson Case, and quoted with approval in the Avon State Bank Case, that "at common law a mere expectancy, not coupled with an interest, could not be sold or assigned. There is no statute in this state changing the common-law rule on this subject; but, on the contrary, our statute has adopted the common-law rule as follows: (Here quoting the sections of the statute above referred to.)"

There can be no question but that the above-quoted statement is correct as far as it goes. Our only criticism is that the statement is not sufficiently comprehensive. After considerable investigation and research, we have concluded that courts of equity went a step further than the common law as announced in the quotation from the Thompson Case, and that when our Legislature adopted said sections 285 and 520 there was no intention of changing the equitable rule. The rule is well stated in the case of In re Garcelon's Estate, supra, as follows: "It is claimed by the petitioner that such an agreement is void under sections 700 and 1045 of the Civil Code of this state [which sections are identical with sections 285 and 520, Rev. Code 1919] the first of which provides that 'a mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any kind,' and the latter section declaring that 'a mere possibility, not coupled with an interest, cannot be transferred.' These sections simply state the well-settled and well-understood rule of the common law upon the subject to which they relate. At common law, a mere possibility, such as the expectancy of an heir apparent, was not regarded as such an existing interest as to be the subject of a sale or capable of passing by

assignment; but in equity the rule was different, and agreements for the sale or release of expectancies, if fairly made and for an adequate consideration, were enforced upon the death of the ancestor; and it was not the intention of the legislature, in enacting the sections of the Code just referred to, to make any change in the rule by which courts of equity were theretofore governed in dealing with this class of contracts."

We are therefore of the opinion that these two sections of our Code will not in themselves render unenforceable this agreement when it is attempted to be enforced, after the death of the ancestor, in a court of equity.

We believe that the rule first announced by this court in the case of Evenson v. Webster should be adhered to. In this proceeding Roy and Charles, under the facts here presented, should be estopped to deny the validity of the agreement. The facts here disclosd that the defendants Roy and Charles, at the time this contract was executed, owned an undivided two twenty-firsts interest in the N. E. ¼ of section 17. They received from their mother and brother and sisters the other undivided nineteen twenty-firsts interest in the said quarter, giving them the entire ownership. In consideration for receiving this nineteen twenty-firsts interest in the N. E. ¼ of section 17, Roy and Charles conveyed by quitclaim deed an undivided two twenty-firsts interest which they then owned in the S. E. ¼ of section 8, and in addition released to the other heirs of their mother their interest as her prospective heir in the S. E. ¼ of section 8. This released interest would amount, according to the laws of succession, to another four twenty-firsts interest in the said S. E. ¼ of section 8. Charles and Roy are keeping the nineteen twenty-firsts interest in the N. E. ¼ of section 17 which they received under the terms of this agreement. Certinly in equity and fair dealing they should not be allowed to retain that interest and repudiate that part of the contract wherein they agreed not to share in the estate of their mother. The facts speak for themselves.

This court in the case of Dobbs v. Elevator Co., 25 S. D. 177, 126 N. W. 250, 252, said: "It seems to be generally held that, where one having the right to accept or reject the transaction takes and retains the benefits thereunder, he becomes bound by the transaction and cannot avoid its obligation or effect by

taking a position inconsistent therewith. Thus it has been repeatedly held that a person by the acceptance of benefits may be estopped from questioning the existence or validity of a contract."

We appreciate that there is a minority holding (see 28 A. L. R. 433) expressing views contrary to those expressed in this opinion. A review of these minority holdings would extend this discussion beyond reasonable limits without serving any useful purpose. Sufficient to say, is, that we are of the opinion that the majority holding will ordinarily. more nearly do justice between the parties concerned. It is contended that this court in the Thompson Case adopted the minority view. For the reasons herein expressed, we do not so conclude; but, to avoid any uncertainty, we expressly overrule anything said in the Thompson Case contrary to the rule herein announced.

The rights of the parties hereto to share in the estate of their mother, Martha Newell, are not changed by reason of the will she made at a time subsequent to the time the agreement was executed. It is also apparent from a reading of the will that the mother had in mind the agreement at the time the will was executed; as she therein expressedly mentions her other property, but refrains from mentioning that property covered by the agreement. It might be that the property mentioned in the agreement to which she retained title, to wit, her undivided interest in the S. E. ¼ of section 8, will pass under the terms of the will; nevertheless, it is subject to the agreement herein discussed. It is our opinion that these plaintiffs and Frederick L. Newell are entitled in this proceeding to have that agreement enforced. The defendants should by appropriate instruments convey to the plaintiffs and Frederick L. Newell the title to whatever interest they, the defendants, receive in the said S. E. ¼ of section 8 from the estate of their mother.

We have carefully considered the findings of fact, and cannot support respondents' contention that the court did not find that appellants complied with the terms of the agreement.

The judgment appealed from is reversed, with instructions to enter a judgment in conformity with the views herein expressed.

CAMPBELL, P. J., and POLLEY, ROBERTS, and WARREN, JJ., concur.