BENNETT *v.* COLEMAN.

5-2591                                    354 S. W. 2d 6

Opinion delivered February 12, 1962.

[Rehearing denied March 12, 1962.]

*Virgil Roach Moncrief* and *John W. Moncrief*, for appellant.

*John B. Moore, Jr.*, for appellee.

PAUL WARD, Associate Justice. Appellant, Susie Bennett, claims title to the southeast quarter of the southeast quarter of Section 30, Township 1 north, Range 1 west, based on a family settlement and an agreement with her father, R. C. McCurley, in 1940. Appellee, Theodore Coleman, claims the same land by virtue of a deed executed to him April 28, 1958, by his grandfather, the said R. C. McCurley. Appellee instituted this litigation in chancery court against appellant to oust appellant from possession and to have title to said land confirmed in himself. From an adverse decree appellant now prosecutes this appeal seeking a reversal.

Essentially it is the contention of appellant that in the year 1940 her father, pursuant to his plan to divide his land among his children, put her in possession of said land with the mutual understanding that if she paid him $120 a year (later, by agreement, $150 a year), as long as he lived, the land would be hers; and that she has remained in possession of said land up until the present time and has made every annual payment up until her father's death on November 27, 1959. All of the above facts are either admitted by appellee or they are supported by the weight of the evidence.

Essentially appellee's contentions are that the facts above set forth are insufficient at law to constitute a conveyance of the land to appellant, and that she is also estopped from now asserting her claim.

*Family Settlement.* R. C. McCurley and his wife lived for many years and raised a family in the neighborhood of the land in dispute. They had four children, viz.: a daughter, Susie Bennett, the appellant; a daughter, Maggie Malone; a son, Gordon McCurley; and, a daughter, Bobbie Coleman, who died prior to 1940 leaving four children, one of whom is appellee. Mrs. R. C. McCurley died in 1947. By the year 1939, when Mr. McCurley was 68 or 69 years old, he and his wife had acquired and owned four separate parcels of land consisting of 80 acres each, all in close proximity. Apparently they desired their children to own, occupy and live

on these lands because Mr. McCurley executed a will about that time in which he left each child (with the four children of Bobbie representing one child) one of the 80 acre parcels, the land in dispute going to appellant. Shortly thereafter Mr. McCurley destroyed the will, but he made an actual settlement or distribution of his lands among his three living children and the children of the deceased daughter, the same as was provided in the purported will. It is not denied that such settlement was made by Mr. McCurley, but, of course, there is a disagreement as to the effect of the settlement.

At any rate one son, Gordon, got the 80 acres assigned to him and he now lives on this parcel; one daughter, Maggie Malone, chose to live in California and the 80 acres assigned to her were sold (agreeable to her and her father) and she received a major portion of the proceeds; likewise, and for apparent reasons, the 80 acres assigned to the children of Bobbie Coleman were sold and the proceeds divided among them; and, appellant took possession of the land assigned to her in 1940 (the land in dispute) and is still in possession thereof. On April 28, 1958, apparently after Mr. McCurley for real or fancied reasons became aggrieved at appellant, he sold the 40 acres in dispute to appellee.

*Terms of the Family Settlement.* There is little if any dispute about the manner in which the settlement was made. Mr. McCurley had an agreement or understanding with each child that such child could have the allotted land if he would go into possession and pay $120 per year (later, by agreement, raised to $150 per year) and he (Mr. McCurley) would pay the taxes.

It is undisputed that, pursuant to the above arrangement, appellant took possession and control of the disputed land, has retained same until the present time, and has made the required annual payments up until the death of her father. From 1940 to 1947 appellant leased the disputed land to a third party and collected the rents thereon. In 1947 she moved to and resided on the land adjoining the disputed land and thereafter she

exercised possession and control of the disputed land on which she made improvements.

After carefully considering the above factual situation as more fully set out in the record and after reviewing the applicable law, we reach the conclusion that appellant has title to the land in dispute. On many occasions the courts and text-writers have expressed approval of the disposition of property by family settlements. This expression is well stated in 16 Am. Jur. *Descent and Distribution* § 146 at 928 in these words:

"In the construction of family agreements for the distribution of the property of intestates, the courts, while seeking the real intent of the parties as revealed in the agreement, will, in the absence of fraud or mistake, adhere strictly to the terms thereof."

In *Martin* v. *Martin*, 98 Ark. 93, 135 S. W. 348, there appears this statement:

"Courts of equity have uniformly upheld and sustained family arrangements in reference to property where no fraud or imposition was practiced."

It is not contended here that any fraud or imposition was practiced by appellant. It is true that some consideration is required to sustain such a settlement. In the present case the annual payments satisfy this requirement. Appellee points out such payments did not equal the rental value of the land. While this may be true in the case of some of the children it is not shown to be true in the case of appellant. However, even if it were true as to appellant, we think it makes no material difference. While there must be a consideration we find no requirement that it be full or complete. In the *Martin* case just cited, the court went on to say:

"The consideration of the transaction and the strict legal rights of the parties are not closely scrutinized in such settlements, but equity is anxious to encourage and enforce them."

Likewise this Court in *Giers* v. *Hudson,* 102 Ark. 232, 143 S. W. 916, in a well reasoned opinion, approved the following statement:

" 'Transactions between parent and child may proceed upon arrangements between them for the settlement of property, or of their rights in property in which they are interested. In such cases this court regards the transactions with favor. It does not minutely weigh the consideration on one side or the other.' "

In the cited case the Court also used language which is highly significant here. At page 240 of the Arkansas Report we find:

"Now, it is equally well settled that this rule which requires a close scrutiny of such transactions is not enforced for the purpose of defeating the contract between parties merely because confidential relationship exists, but it is enforced solely for the purpose of discovering what the real intention of the parties was and to prevent one occupying such a relation of trust from securing an unfair advantage by reason thereof."

In the case under consideration there is no intimation that appellant (or any of the children) in any way took an unfair advantage of her father. The record clearly reveals the whole idea of a division and settlement of property was solely that of Mr. McCurley. Also, as mentioned in the above quotation, it is important to ascertain the "real intention" of Mr. McCurley. We believe it is clear from the record that he "intended" for the children (and appellant in particular) to have and own the property provided only they paid the stipulated annual amount, as did appellant. Such "intent" is clearly deducible from the fact that Mr. McCurley gave one of his daughters the proceeds from the sale of land assigned to her after she had chosen not to live on it. This was done even though she did not fulfill the terms of the assignment as did appellant.

In addition to the full force and effect which must be given to the family settlement doctrine, consideration must also be given to the fact that appellant carried out

her part of the agreement made between her and her father. The fulfillment of this agreement required three things to make it binding and effectual, and to bypass the statute of frauds.

*One,* there must be the "intent" that appellant should own the property. As before explained we think such was the intent of both appellant and her father. *Two,* there must be a complete delivery of possession to appellant. This point is not seriously challenged and in any event we think it is supported by the great weight of evidence. *Three,* there must be a consideration passing from appellant to her father. We have already mentioned the annual payments, but we believe there is present another element of consideration that can be taken into account. We refer to the fact that appellant was willing to remain on the land and thereby forego any opportunity to acquire a home elsewhere. At least this was a consideration that one daughter did not want to pay. In plain simple language there was an agreement between appellant and her father which appellant has completely fulfilled, and equity should see to it that her father's part of the agreement is also fulfilled.

The above situation brings this case in line with the reasoning often applied by this Court in similar cases. We refer to the line of cases where the owner agrees orally to give his property to one who agrees to support the owner during his lifetime. In these cases we have uniformly held the oral agreement is enforceable and will not be defeated by the statutes of frauds. See: *Hinkle* v. *Hinkle,* 55 Ark. 583, 18 S. W. 1049; *Fred* v. *Asbury,* 105 Ark. 494, 152 S. W. 155; *Speck* v. *Dodson,* 178 Ark. 549, 11 S. W. 2d 456; and, *Schwegman* v. *Richards,* 184 Ark. 968, 43 S. W. 2d 1088. Many decisions in support of the above cases have been rendered by this Court in recent years, but it would serve no useful purpose to set them out. The essence of what the many decisions hold is clearly summed up by this Court in the *Speck* case, *supra,* in these few words: "Appellee, having performed his contract, was entitled, after decedent's

death, to enforce the agreement, notwithstanding the same was orally made."

We are cognizant of the facts that Mr. McCurley had never made a deed to appellant and that he did deed the land to appellee. However, we think these facts are of no avail to appellee because, by his own testimony, he knew all about the family settlement and appellant's possession and claim when he accepted the deed. In fact appellee stated he was astonished that he (McCurley) was backing up "on that decision". For any recoupment in purchase price appellee must look to the estate and not to appellant.

We have also carefully considered appellee's plea of estoppel based on an alleged statement appellant made to a witness to the effect her father could do what he pleased with the land in question, i.e., he could sell it if he desired. In the first place appellant emphatically denied making any such statement. In any event, such a statement by appellant would seem out of accord with her long asserted claim and her actual possession. Moreover, if she made such a statement, the actual meaning could be subject to doubt. She realized, of course, that she had no deed, and she could have meant there was nothing she could do to stop her father if he was bent on deeding the land to another person. We are, therefore, unwilling to say this one questionable incident is so indicative of appellant's intent to own the land as to supplant the intent demonstrated by **many years of possession** and control.

Accordingly, the decree of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed.

HARRIS, C. J., dissents.