Louise Matthews GANNAWAY, Sué Ellen HALE,
Louise Harris GANNAWAY, Billy Louise STARK and
Harold STARK and Sandra HAGUE *v.*
William Byron GODWIN and Mary Charline
Gannaway GODWIN

74-68                                                      511 S.W. 2d 171

Opinion delivered July 1, 1974

*Jones, Matthews & Tolson,* for appellants.

*Huey and Vittitow,* for appellees.

CARLETON HARRIS, Chief Justice. Dr. C. E. Gannaway, a resident of Bradley County, died testate in March, 1944. Dr. Gannaway had been married twice and was the father of two sons, Files Gannaway and Claude Gannaway, by the first marriage, and the father of a daughter by the second

marriage, Charline Gannaway (now Godwin). Dr. Gannaway was predeceased by Claude, who left surviving him two sons, C. E. Gannaway and Ben Gannaway. The will of Dr. Gannaway contained a residuary clause naming the three children, heretofore mentioned, as residuary devisees and legatees, the estate of Dr. Gannaway consisting of both real and personal property. The widow, Rena Gannaway, was named executrix of the estate. As reflected by the abstract, sometime prior to July, 1972, Ben Gannaway died, survived by his widow, Louise Matthews Gannaway and a daughter, Sue Ellen Hale, and Files Gannaway died, survived by his widow, Louise Harris Gannaway, and two daughters, Sandra Hague and Billie Louise Stark, these children of Ben and Files Gannaway, along with the widows being the appellants herein.

In July, 1972, Mrs. Godwin, along with her husband, William Byron Godwin, appellees herein, instituted suit in the Bradley County Chancery Court, seeking partition of the real property owned by Dr. C. E. Gannaway at the time of his death. Appellants filed a counter-claim seeking partition of 93 shares of common stock in Schering-Plough, Inc. held by appellee, which was an increase from 6 shares of common stock which had been owned by Dr. Gannaway in Plough, Inc.[1] After the appointment of commissioners, the real property was sold at public sale and the proceeds divided among the parties. Evidence was presented on the issue of who owned the stock, and the court held that the counter-claim of appellants should be dismissed, and the stock vested in appellee. From the decree so entered, appellants bring this appeal.

A chronological background of events that occurred would probably be helpful in a discussion of this case. On May 7, 1945, Mrs. Rena Gannaway, as executrix of the estate of Dr. Gannaway, filed her "Final Account Current" reflecting under "receipts", the bank account held by Dr. Gannaway at the time of his death and insurance (New York Life) payable to the estate. The receipts from these sources totaled $4,842.69. Expenditures were then shown, which included an advance to the heirs of $1,681.98. The settlement

---

[1]There was a merger between Schering and Plough in 1972.

reflected that there was a balance to be divided among the heirs under section 6 of the will (the residuary clause) showing Charline to be due $438.87, Files Gannaway to be due $438.88 and Ben L. Gannaway and Claude Edgar Gannaway, children of Claude Gannaway, to be due the sum of $219.44 each. Thereafter (though undated), each of the four people just mentioned signed a "receipt", the amounts being as heretofore set out, as follows:

> "Received of Mrs. Rena Gannaway, a Executrix of the Estate of C. E. Gannaway, Deceased, the sum of [amount inserted] in full payment and satisfaction of all monies or property due me as one of the heirs at law of the said C. E. Gannaway as my distributive share of said estate as specified in the Will of the said C. E. Gannaway, and I do hereby discharge and release the said Mrs. Rena Gannaway, as such Executrix, from all claims for my distributive share of said estate, and from all actions, claims and demands whatsoever by reason thereof, and of any other act, cause, matter or thing whatsoever; this release in no way affecting my interest in the real estate."

The stock remained in the possession of Mrs. Rena Gannaway for approximately 18 years until the time of her death (1962), and has been in possession of Mrs. Godwin since that time. On February 24, 1972, Mrs. Godwin filed a petition in the Bradley County Probate Court setting out that the stock in issue was bequeathed, under the will of C. E. Gannaway, to Claude, Files, and Charline, as tenants in common; that in order to accomplish the transfer of the ownership of the stock on the corporate records, "it is necessary for this Petitioner to obtain an order of this court directing the said transfer." Whereupon, it was prayed that the court enter an order *nunc pro tunc* vesting title to the stock in the three children, and further directing the transfer agent to transfer the ownership of said stock to the persons mentioned. The then probate judge entered an order in compliance with the prayer on March 1, 1972, the order stating that "Bankers Trust Company of New York, New York is hereby ordered to cause the Stock Records of said corporation to so indicate said ownership as of May 5, 1945, *nunc pro tunc.*" In March, 1972,

Mrs. Godwin filed another petition in the Probate Court of Bradley County asking to reopen the estate of her mother to reflect that Mrs. Gannaway owned the stock here in question; that Mrs. Godwin was the sole heir of her mother and that the court should order distribution of the stock accordingly. The probate court granted the petition, and on May 11, 1972, found that the stock had been omitted in the final order of distribution and the ownership of same should be ordered vested in Mrs. Godwin. The latter was named administratrix for that purpose. These were all the transactions occurring prior to the institution of the partition suit.

Appellee, to support her claim as owner of the stock, relies upon the receipts, or releases, executed by the other children and grandchildren of Dr. Gannaway, wherein each heir acknowledged full payment of his share in the estate and Mrs. Gannaway, as executrix, was released from all claims that each of those who signed the receipts might have against the estate. Appellants appear to depend primarily on the petition filed by Mrs. Godwin in February, 1972 in which she asked for a *nunc pro tunc* order which would enable the reissuance of the stock to the three children of Dr. Gannaway. For reversal, it is asserted that the chancellor erred in not considering this petition, and the order of the Bradley County Probate Court subsequently entered. After the present case was submitted to the chancellor, he commented that the *nunc pro tunc* portion of the order was an attempt to make the probate records reflect a fact that did not actually appear to have taken place at the time of the original entry of the order of distribution, and he further stated that it was indicated during the trial that the reason for the above order was merely to effectuate transfer of record ownership in accordance with requirements of the transfer agent. Appellants say there is no evidence to support this last conclusion, and they argue that the petition for the *nunc pro tunc* order is an admission against interest, that is, an admission that the stock properly belonged to all heirs. It appears that the chancellor did give consideration to this evidence; be that as it may, looking at the matter *de novo*, we think this circumstance falls far short, when viewed together with other facts in the case, of establishing recognition of a present right in the heirs of the brothers to an interest in the stock.

Like the chancellor, we think the strongest evidence in the case is the receipts signed by all heirs. Appellants say that the receipts should not be binding because the stock was not included in the Final Account Current. Of course, it must be remembered that Dr. Gannaway's sons and grandsons (who executed the receipts) had every right to ask for an inventory if they were dissatisfied. It is well to also recall that the Final Account Current reflects that advances had been made to the heirs. It should also be pointed out that there is no allegation of fraud whatsoever in the pleadings filed by appellants. The most important fact, however, is that the burden of proof was upon appellants to establish that the releases were obtained by subterfuge, or mistake; not a single witness testified to that effect, and, in fact, no witness testified on behalf of appellants. The receipts (or releases) themselves contain language which strongly indicates that *all* claims as to personal property were being released by the signers. While Mrs. Gannaway was discharged and released from "all claims for my distributive share of said estate, *** actions, claims and demands whatsoever", the receipt concludes as follows, "*this release in no way affecting my interest in the real estate.*" [Our emphasis].

How could these heirs have more clearly stated that they were releasing the estate of all claims relating to personalty than to emphasize that they were not releasing their claims to the realty? In other words, it appears that a family settlement was entered into. In *Bennett* v. *Coleman*, 234 Ark. 633, 354 S.W. 2d 6, we quoted from 16 Am. Jur. Descent and Distribution § 146, page 928, as follows:

"In the construction of family agreements for the distribution of the property of intestates, the courts, while seeking the real intent of the parties as revealed in the agreement, will, in the absence of fraud or mistake, adhere strictly to the terms thereof."

That opinion also quoted an earlier case[2], stating:

"Courts of equity have uniformly upheld and sustained family arrangements in reference to property where no

[2]*Martin* v. *Martin*, 98 Ark. 93, 135 S.W. 348.

fraud or imposition was practiced."

In *George* v. *Serrett, Administrator,* 207 Ark. 568, 182 S.W. 2d 198, after pointing out that a receipt, although reciting a settlement in full, may be open to explanation, we then stated:

"The sole evidence tending to establish the family settlement is the releases or receipts executed by the parties in June, 1936, when they accepted from the administrator checks for sums supposed to represent their respective distributive shares in the estate. \*\*\*

"Whether the transaction assumed the dignity of a family settlement is a matter of no great importance. It is admitted that all of the heirs did execute and deliver to the administrator these receipts or releases, by which they, and each of them, accepted the sums so paid 'in full settlement of all our interest in said estate,' and in consideration thereof did 'release and acquit the administrator of any further liability to us on account of our interest in said estate.' "

Here, too, it is admitted that all heirs executed the releases, and there is no allegation, contention, nor proof of fraud.

Finally, it is urged that the chancellor erred in admitting pleadings and orders from the Rena Gannaway estate into evidence. The trial court announced that it was not considering these exhibits and we agree that these instruments are not pertinent to the question involved, and really have no effect one way or the other. Actually, the only relevant fact shown by the exhibits is that Charline Godwin is the sole heir of Rena Gannaway.

Summarizing, our decision is based on two facts, *viz.,* the receipts or releases executed by the original heirs clearly denote an intention to release the estate from all claims relating to personal property, and second, the burden was on appellants to show that these releases were obtained by

fraud, misrepresentation, or mistake of fact. This burden has not been met.

Affirmed.