Betty HOFFMAN, Jimmy Brown, Molly Brown, John L. Bowen,
Christopher Brown, Elizabeth S. Goodwin, Lynn Taylor  *v.*
Mary Ann GREGORY, The Revocable Trust of William J. Brown
and Ann O. Brown, The Estate of Ann O. Brown, Deceased,
Community First Trust Company

04-934

Supreme Court of Arkansas
Opinion delivered March 3, 2005

[Rehearing denied April 7, 2005.]

*Wright, Lindsey & Jennings, LLP*, by: *C. Tad Bohannon*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *R. Christopher Lawson*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This appeal concerns whether a memorandum written by Appellee Mary Ann Gregory constitutes an enforceable release of her expectancy interest in Ann O. Brown's estate. The circuit court held that the memorandum was not an enforceable release of her expectancy interest. We agree and affirm the circuit court's decision.

Appellee Mary Ann Gregory's grandparents, William J. Brown and Ann O. Brown, created a revocable living trust ("Trust") that listed Appellants Betty Hoffman, Jimmy Brown,

Molly Brown, John L. Bowen, Christopher Brown, Elizabeth Goodwin, Lynn Crawford Taylor, and Appellee Mary Ann Gregory as the beneficiaries. Mr. Brown died on October 26, 1993, and his wife, Ann O. Brown, died almost ten years later on January 5, 2003. Four years before Mrs. Brown's death, Mary Ann and her husband moved into the Brown's home to provide personal care services for her grandmother.

On July 3, 2001, Mary Ann signed a memorandum requesting that she be removed from any proceeds left to her upon the passing of her grandmother, Ann O. Brown, or her mother, Betty Jo Hoffman. Later, on August 23, 2001, Mrs. Brown and Mary Ann signed a contract for personal care and indemnity agreement. According to this agreement, Mary Ann agreed to continue providing personal care services for Mrs. Brown, and, in return, Mrs. Brown agreed to pay Mary Ann for those services. The agreement also instructed the trustee of the Trust to defend Mary Ann from any claims made against her by family members for the recovery of any payments Mary Ann received from her grandmother. Subsequently, on September 28, 2001, Mrs. Brown executed her last will and testament. Under the terms of the will, Mrs. Brown devised a portion of the assets of the Trust, including the Browns' home and furnishings, to Mary Ann. The will also included an *in terrorem*, or a "no contest," clause. Shortly after Mrs. Brown's death on January 5, 2003, the will was admitted to probate as the last will and testament of Ann O. Brown, and Appellee Community First Trust Company was appointed executor of the estate.

Mary Ann then filed a petition in the Garland County Circuit Court for declaratory relief concerning the contract for personal care and indemnity agreement, which petition requested (1) a declaration that the agreement was valid and enforceable, and (2) an order directing the trustee to defend and hold her harmless from all claims asserted against her by other beneficiaries of the Trust.[1] Appellants responded by intervening in the proceeding filed by Mary Ann. They also petitioned for declaratory judgment in a separate action, seeking a declaration that the July 3, 2001 memorandum constituted an enforceable release of Mary Ann's expectancy interest in Mrs. Brown's estate. In addition to disputing the merits of Appellants' petition for declaratory judgment,

---

[1] Upon the death of Mrs. Brown, Appellee Community First Trust Company became the sole trustee of the Trust.

Mary Ann urged the circuit court to find that Appellants' filing of the petition constituted a violation of the "no contest" provision of Mrs. Brown's will such that Appellants should be forever barred from taking any share of her estate.

Following a bench trial on both petitions, the circuit court denied Appellants' petition for declaratory judgment. In its order entered on June 3, 2004, the court found that the memorandum was nothing more than a request by Mary Ann that her grand-mother not bequest anything to her by will or trust. Furthermore, the court stated that Mrs. Brown's subsequent action of executing a last will and testament that bequeathed a portion of the Trust, including real property, to Mary Ann was evidence that Mrs. Brown "declined to concede to [Mary Ann's] unilateral request." As to the relief requested by Mary Ann, the circuit court con-cluded that Appellants' petition for declaratory judgment did not constitute a "will contest" but merely represented an attempt to enforce a perceived unilateral agreement. Finally, the court ruled that the contract for personal care and indemnity agreement was ineffective to require the Trust to defend Mary Ann against any claims because Mrs. Brown signed the document in her individual capacity and not in her capacity as trustee. On June 9, 2004, an amended order was entered, which substantively mirrored the previous order but also included a certification pursuant to Ark. R. Civ. P. 54(b) (2004). From this order, Appellants appeal the denial of their petition to enforce the memorandum as a binding release of Mary Ann's expectancy interest in Mrs. Brown's estate. Mary Ann argues on cross appeal that the circuit court erred in finding that Appellants did not violate the "no contest" provision of the will and in declining to enforce the contract for personal care and indemnity agreement signed by Mary Ann and Mrs. Brown.

This case was assumed by us to balance the docket, which we may do pursuant to Ark. Sup. Ct. R. 1-2(g) (2004). Although the final distribution of Mrs. Brown's estate is still pending, the circuit court executed a Rule 54(b) certificate to permit an immediate appeal. *See* Ark. R. Civ. P. 54(b) (2004). We therefore have jurisdiction to consider this appeal.

A declaratory-judgment proceeding is reviewed in the same manner as any other judgment, and if there is any substantial evidence to support the finding upon which the judgment is based, it will be affirmed. *Commercial Printing Co. v. Rush,* 261 Ark. 468, 549 S.W.2d 790 (1977) (citing *Midsouth Insurance Company v. Dellinger,* 239 Ark. 169, 388 S.W.2d 6 (1965)). In determining

whether there is any substantial evidence to support the circuit court's finding, we must view the record in the light most favorable to the appellee. *Id.* (citing *Power v. Howard*, 253 Ark. 1052, 490 S.W.2d 435 (1973)). The presumptions on appeal are all in favor of the validity of the judgment of the trial court. *Id.* (citing *Woodman of Union of America v. Henderson*, 186 Ark. 524, 54 S.W.2d 290 (1932)).

For Appellants' sole point on appeal, they argue that the circuit court erred when it decided not to treat the July 3 memorandum as an enforceable release of Mary Ann's expectancy interest in Mrs. Brown's estate. The memorandum signed by Mary Ann stated:

> I am requesting as of the above date to be removed from any proceeds to be left to me upon the passing of either Ann O. Brown or Betty Jo Hoffman. These funds are meant to compensate any expenses my Grandmother has incurred while I was living with her.
>
> This is a decision that I have made on my own accord without my coercion or duress. I would request immediate action on the part of the Trustee, Mr. Wingfield Martin, to finalize my request.

A release of an expectancy interest is an agreement whereby the prospective heir releases an interest in the ancestor's estate "in consideration of an advancement or for other valuable consideration." *Leggett v. Martin*, 203 Ark. 88, 94, 156 S.W.2d 71, 74 (1941). In the *Leggett* case, we specifically adopted the majority rule governing the enforceability of a release by an expectant heir in his or her ancestor's estate:

> [T]he release of an expectant heir to an ancestor, in consideration of an advancement or for other valuable consideration, excludes the heir from participation in the ancestor's estate at his death, provided, in case part or all the estate is realty, there is such a writing as to satisfy the statute of frauds, and provided further that the person executing the release was at the time competent to contract, and that the release was not obtained by means of fraud or undue influence.

*Id.* (citing CJ: 18 C.J. *Descent and Distribution* § 112 (1919)). *See* CJS: 26B C.J.S. *Descent and Distribution* § 69 (2004). The *Leggett* court also referred to the majority rule as stated in ALR: Annotation, *Release to ancestor by heir expectant*, 28 A.L.R. 428 (1924):

> The weight of authority is that an agreement between a prospective heir and his ancestor by which the former promises, in effect, to accept certain property or other valuable consideration then given him by his ancestor as his full share of the latter's estate, and to make no further claim as heir, is freely and fairly entered into, and made in such form (according to some of the cases) as to comply with the Statute of Frauds, is valid and will be enforced in the courts against such heir after the ancestor's death.

*Id.* This approach adopted in *Leggett* remains the majority rule used by courts in other jurisdictions. *See Ware v. Crowell,* 251 Va. 116, 465 S.E.2d 809 (1996); *Martin v. Smith,* 404 So.2d 341 (Ala. 1981); *Stewart v. McDade,* 256 N.C. 630, 124 S.E.2d 822 (1962); and *Anderson v. Forbes,* 169 Tenn. 223, 84 S.W.2d 104 (1935); *Henrich v. Newell,* 59 S.D. 372, 240 N.W. 327 (1932). *See also* CJS: 26B C.J.S. *Descent and Distribution* § 69 (2004). In general, these courts hold that releases by expectant heirs are enforceable if the agreement to release the expectancy is supported by valuable consideration and is free from fraud. *Id.* In sum, when a court considers whether an agreement to release an expectancy interest is enforceable, it evaluates the agreement for the same elements as it would in determining the enforceability of any contract: offer, acceptance and consideration. *Id.* Thus, as with any other agreement, an agreement to release an expectancy interest is not enforceable when it lacks proof that an offer to release the expectancy interest was made, that the offer was accepted, and that consideration of an advancement or other valuable consideration was given in exchange for the release.

In the instant case, the record clearly reflects that Mary Ann made a formal offer in the July 3 memorandum to release her expectancy interest in both her grandmother's estate and her mother's estate. The record, however, does not reflect that Mrs. Brown accepted Mary Ann's offer to release her expectancy interest, either through her conduct, her actions, her words, or her signature on the memorandum. In fact, as the circuit court indicated in its order, Mrs. Brown's conduct after the offer suggests otherwise. Subsequent to the offer, she executed a will that left Mary Ann a portion of the trust assets, including the Browns' home and its contents. Based on this conduct, the court concluded that "it is clear that Mrs. Brown declined to concede to Ms. Gregory's unilateral request." According to the majority rule adopted by this court over sixty years ago in *Leggett v. Martin, supra,* a release of an expectancy interest will not be enforced unless,

without fraud, there is an offer, *an acceptance*, and consideration of an advancement or other valuable consideration given in exchange for the release. *See Ware v. Crowell, supra; Martin v. Smith, supra; Stewart v. McDade. supra; Anderson v. Forbes, supra;* and *Henrich v. Newell, supra.* Because substantial evidence supports the circuit court's finding that Mary Ann's one-sided offer was not accepted by Mrs. Brown, we affirm on this point. Consequently, we need not decide whether the July 3 memorandum was supported by adequate consideration.

Appellants nonetheless suggest that a release agreement may exist between the prospective heir and the ancestor *or* between the prospective heir and other prospective heirs. In other words, Appellants contend that Mary Ann's offer to release her expectancy interest also created an agreement between Appellants and Mary Ann. Yet, Appellants offer no authority for the proposition that, before the ancestor's death,[2] prospective heirs can unilaterally agree on the release of an expectancy interest without the knowledge and consent of the ancestor. This court will not consider an argument without citation to authority, unless the argument is so well established that no additional research is necessary. *Kelly v. State,* 350 Ark. 238, 85 S.W.3d 893 (2002); *Rainey v. Hartness,* 339 Ark. 293, 5 S.W.3d 410 (1999). In any event, such a transfer of a prospective heir's expectancy interest in an estate without the knowledge of the ancestor could effectively deceive the ancestor "into leaving his property to one to whom he never intended it should go." *Stewart v. McDade,* 256 N.C. 630, 636, 124 S.E.2d 822, 826 (1962).

Appellee Mary Ann Gregory also raises two points on cross appeal. The record, however, does not contain a notice of cross appeal. In fact, the docket sheets in the record do not indicate that a notice of cross appeal was ever filed.

Our case law is well settled that when an appellee seeks something more than he or she received in the lower court, a notice of cross appeal is necessary to give us jurisdiction of the cross appeal. Ark. R. App. P. – Civ. 3(d) (2004); *Boothe v. Boothe,* 341 Ark. 381, 17 S.W.3d 464 (2000); *Brown v. Minor,* 305 Ark. 556, 810 S.W.2d 334 (1991). In other words, a notice of cross appeal is

---

[2] *Gannaway v. Godwin,* 256 Ark. 834, 511 S.W.2d 171 (1974), is inapposite. In that case, the release agreement between the heirs occurred after the ancestor's death.

required when the appellee seeks affirmative relief that was not obtained in the lower court. *See City of Marion v. Baioni*, 312 Ark. 423, 850 S.W.2d 1 (1993); *Edwards v. Neuse*, 312 Ark. 302, 849 S.W.2d 479 (1993); *Pledger v. Illinois Tool Works, Inc.*, 306 Ark. 134, 812 S.W.2d 101 (1991); *Egg City of Arkansas, Inc. v. Rushing*, 304 Ark. 562, 803 S.W.2d 920 (1991); *Enclare, Inc. v. Gocio*, 267 Ark. 605, 593 S.W.2d 159 (1980); *Moose v. Gregory*, 267 Ark. 86, 590 S.W.2d 662 (1979).

█ In contrast, a notice of cross appeal is not necessary when the appellee is not seeking affirmative relief on appeal. *Hasha v. City of Fayetteville*, 311 Ark. 460, 845 S.W.2d 500 (1993). For example, despite the absence of a notice of cross appeal, we will address the appellee's additional points on appeal that explain why the lower court erred in its reasoning but reached the right result. *Independence Federal Savings & Loan Ass'n v. Davis*, 278 Ark. 387, 646 S.W.2d 336 (1983) (supplemental opinion denying rehearing).

█ In this appeal, Appellee Mary Ann Gregory seeks relief that she failed to obtain in the circuit court. Specifically, the circuit court denied her petition for declaratory relief concerning the contract for personal care and indemnity agreement. Furthermore, she argued in response to Appellants' petition for declaratory judgment that the petition violated the "no contest" provision of Ann Brown's will. In rejecting this argument, the circuit court ruled that Appellants' petition did not constitute a "will contest." Now, Appellee Mary Ann Gregory seeks affirmative relief she failed to obtain in the circuit court. She asks this court to hold that: (1) the circuit court erred in finding that Appellants did not violate the "no contest" provision of the will of Ann O. Brown, and (2) the circuit court erred in declining to enforce the contract for personal care and indemnity agreement signed by Mary Ann Gregory and Ann O. Brown. Because the appellee is requesting something more than she received in the lower court, a notice of cross appeal is necessary. As stated earlier, the record does not indicate that a notice of cross appeal was ever filed. Thus, we are without jurisdiction to consider Appellee Mary Ann Gregory's points on cross appeal.

Affirmed.